(313 P.3d 60)

No. 108,391

UNIVERSITY OF KANSAS HOSPITAL AUTHORITY and KANSAS UNIVERSITY PHYSICIANS, INC., *Appellees*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/KANSAS CITY, KANSAS, *Appellee*, v. STATE OF KANSAS—KANSAS HIGHWAY PATROL, *Appellant*.

Opinion filed September 13, 2013.

*Derenda J. Mitchell*, assistant attorney general, and *Derek Schmidt*, attorney general, for appellant.

*E. Lou Bjorgaard Probasco* and *Jennifer Martin Smith*, of Topeka, for appellees University of Kansas Hospital Authority and Kansas University Physicians, Inc.

*Brandelyn K. Nichols*, assistant counsel, Unified Government of Wyandotte County/Kansas City, Kansas, for appellee Board of County Commissioners of the Unified Government of Wyandotte County/Kansas City, Kansas.

Before HILL, P.J., POWELL, J., and HEBERT, S.J.

HEBERT, J.: The University of Kansas Hospital Authority and Kansas University Physicians, Inc. (KU) filed a collection action against the Board of County Commissioners of the Unified Government of Wyandotte County/Kansas City, Kansas (Wyandotte) and the State of Kansas, Kansas Highway Patrol (State), seeking to recover the cost of medical treatment provided to an arrested person. The district court denied the State's motion for summary judgment and granted summary judgment in favor of KU and against the State. The State appeals.

We affirm the judgment of the district court.

## UNCONTROVERTED FACTS

The material facts are not in dispute and were succinctly summarized by the district court in a memorandum opinion filed on March 29, 2012, and thereafter specifically enumerated in a journal entry of judgment filed on May 7, 2012:

"1. On November 5, 2008, Highway Patrol Trooper Greg Peters determined a vehicle was speeding in Wyandotte County and pursued it.

"2. The driver of the speeding vehicle, Wayne Thomas, eventually crashed.

"3. The Trooper arrested and handcuffed Thomas.

"4. Trooper Peters drove Thomas to the University of Kansas Hospital, still handcuffed, where nursing personnel advised Peters that Thomas would be admitted.

"5. Trooper Peters advised the nurses that Thomas was on a 'police hold'.

"6. The next day, hospital personnel advised Peters that Thomas was ready for release.

"7. Trooper Peters went to the hospital, handcuffed Thomas and took him to the Wyandotte County jail.

"8. Thomas was charged in Wyandotte County District Court with eluding a police officer, a severity level 9, person felony.

"9. Mr. Thomas was indigent and had no medical insurance.

"10. The reasonable and necessary charges made for his care by plaintiff University of Kansas Hospital Authority totaled $23,197.29.

"11. The reasonable and necessary costs for his care by plaintiff Kansas University Physicians, Inc. totaled $2,311.00."

KU moved for summary judgment "against one or both of the defendants." The State moved for summary judgment "on each of [KU's] claims." Wyandotte argued that the State was liable as a

matter of law. Based on the uncontroverted facts, the district court found that the Kansas Highway Patrol had custody of Thomas when he received his treatment and therefore, pursuant to K.S.A. 22-4612, the State was liable for the costs incurred.

## STANDARD OF REVIEW

Since the parties do not contest the facts and the issue turns on statutory interpretation, this court's review is unlimited. See *David v. Hett*, 293 Kan. 679, 682, 270 P.3d 1102 (2011); *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009).

We are essentially called upon to determine whether the legislative policy discerned by our Supreme Court in *Wesley Med. Center v. City of Wichita*, 237 Kan. 807, 703 P.2d 818 (1985), has been superseded by the subsequent enactment of K.S.A. 22-4612.

### *The* Wesley Med. Center *Decision*

In the *Wesley* case, our Supreme Court dealt with a situation in which an offender had shot and killed a highway patrol officer in Butler County and fled toward Wichita. He was stopped by officers of the Wichita Police Department and a gun battle ensued. The offender was seriously wounded, and the Wichita police officers summoned an ambulance which took him directly to Wesley Medical Center where he was admitted for treatment. Wichita police officers guarded the offender on the way to the hospital and for several days thereafter. The offender was charged with attempted murder in Sedgwick County and made a first appearance before a magistrate while in the hospital. Officers of the Sedgwick County Sherriff's Department then took over guard duty until the offender was released from the hospital and transferred to the Sedgwick County jail. The offender was transferred to Butler County, where he was convicted of murder, and then returned to Sedgwick County for disposition of the other felony charges.

Wesley Medical Center bought an action against the City of Wichita and Sedgwick County seeking to recover payment for the services rendered to the offender. The district court found that the city was liable for services rendered during the period prior to the

transfer of custody to the county, and the county liable thereafter. The City appealed that decision.

The Supreme Court reversed the district court and held that the City was not liable for any portion of the offender's medical expenses. After reviewing various statutes and authorities, the Court enunciated the controlling principles. "So long as an offender is arrested for violation of state law and in due course is charged with a state crime and delivered to the county jail for confinement, the medical and other incidental expenses incurred as a consequence of and following his arrest, and until his transfer to such facility, are chargeable to the county." *Wesley*, 237 Kan. 807, Syl. ¶ 2. The "county's liability for charges and expenses for safekeeping and maintenance of the prisoner, including medical expenses, does not depend on which police agency happens to be called to the scene of the alleged crime or whether such expenses were incurred before or after he is placed in a county jail. *The controlling factor is that the prisoner was arrested and subsequently charged with violation of a state law.*" (Emphasis added.) *Wesley*, 237 Kan. 807, Syl. ¶ 3.

Here, Trooper Peters pursued the suspect, arrested him at the scene, and transported him directly to KU for treatment of injuries prior to transferring him to the Wyandotte County jail. The suspect was charged with eluding an officer, a severity level 9 felony under state law. It would appear at this point that application of the legislative policy discerned in *Wesley* would render Wyandotte County liable for the medical expenses incurred.

*K.S.A. 22-4612*

The application of *Wesley* is, however, complicated by K.S.A. 22-4612, which was enacted by the Kansas Legislature in 2006, and which provides, in pertinent part:

"(a) Except as otherwise provided in this section, a county, a city, a county or city law enforcement agency, a county department of corrections or the Kansas highway patrol *shall be liable* to pay a health care provider for health care services rendered to persons *in the custody of such agencies* . . . ." (Emphasis added.)

K.S.A. 22-4612(b) and (c) deal with payment agreements and determination of amounts. K.S.A. 22-4612(d) provides that the law

does not create a duty on the part of health care providers to render services "to a person in the custody of . . . the Kansas highway patrol."

K.S.A. 22-4613 was enacted together with K.S.A. 22-4612 and provides:

"(a) A law enforcement officer having custody of a person shall not release such person from custody merely to avoid the cost of necessary medical treatment while the person is receiving treatment from a health care provider unless the health care provider consents to such release, or unless the release is ordered by a court of competent jurisdiction. When the law enforcement officer is satisfied that probable cause no longer exists to believe the suspect committed a crime based upon the ongoing investigation, or the prosecuting attorney gives notice that no prosecution will be forthcoming at this time, the law enforcement officer may release such person from custody. Upon the date of notification to the health care provider that the person is being released from custody because the ongoing investigation indicates that probable cause no longer exists or a decision by the prosecuting attorney that no charges will be filed, the law enforcement agency shall no longer be responsible for the cost of such person's medical treatment."

The specific inclusion of the Kansas Highway Patrol in these statutes recognizes that members of the highway patrol are law enforcement officers with the power to arrest and to take into custody persons charged with violations of the laws of the state. See K.S.A. 2010 Supp. 74-2105(a); K.S.A. 74-2108; K.S.A. 74-2109.

KU suggests that K.S.A. 22-4612 does not establish liability but merely pertains to payment rates. In support of this argument, KU attaches to its brief an extensive appendix purporting to establish the legislative history of the statute. We find these materials to be irrelevant to our consideration for two reasons. First of all, the materials submitted are not statements from legislators, but are mostly statements from lobbyists and interested parties which were submitted to a legislative committee. As such, these materials are not particularly illustrative of legislative intent. See *State ex rel. Stephan v. Commemorative Services Corp.*, 16 Kan. App. 2d 389, 395, 823 P.2d 831 (1991), *rev. denied* 250 Kan. 806 (1992).

More importantly, however, we resort to and consider legislative history only when a statute is ambiguous. "An appellate court merely interprets the language as it appears; it is not free to speculate and cannot read into the statute language not readily found

there." *Steffes v. City of Lawrence,* 284 Kan. 380, Syl. ¶ 2, 160 P.3d 843 (2007). The basic guidelines are restated and summarized in *State v. Urban,* 291 Kan. 214, 216, 239 P.3d 837 (2010):

"The most fundamental rule is that the intent of the legislature governs if that intent can be ascertained. *State v. Arnett,* 290 Kan. 41, 47, 223 P.3d 780 (2010). . . . An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Raschke,* 289 Kan. 911, 914, 219 P.3d 481 (2009). When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history or other background considerations to construe the legislature's intent. *State v. Trautloff,* 289 Kan. 793, 796, 217 P.3d 15 (2009)."

In crafting K.S.A. 22-4612 and K.S.A. 22-4613, the legislature used strong directive language. K.S.A. 22-4612(a) clearly states that the enumerated agencies *"shall* be liable to pay." K.S.A. 22-4612(c) specifies that it *"shall* be the responsibility" of the enumerated agencies to determine and remit payment. K.S.A. 22-4613(a) directs that a law enforcement officer *"shall not* release" a person from custody merely to avoid the costs of necessary medical treatment. "The statutory language 'shall' generally represents a mandatory course of conduct." *State v. Bee,* 288 Kan. 733, 738, 207 P.3d 244 (2009).

We find that K.S.A. 22-4612 when read together with K.S.A. 22-4613, presents a clear and unambiguous legislative statement that liability for the medical expenses of persons under arrest is now to be determined on the basis of which enumerated agency has custody of the arrested individual at the time such medical expenses are incurred. As a consequence, the prior directive of *Wesley* finding the controlling factor to be an arrest and charge for violation of state law is superseded by the more recent statute and is no longer determinative of the instant situation.

### DETERMINATION OF CUSTODY

Assessment of liability herein, then, must be premised on a determination of whether the district court correctly found that Tho-

mas was in the custody of the Kansas Highway Patrol when the expenses for health care services were incurred.

We first address an argument raised by KU that K.S.A. 19-1910(b)(1) provides a basis for the State's liability. That statute provides:

"If a person is stopped by or is in the custody of a law enforcement officer, as defined in K.S.A. 22-2202, . . . who is an employee of the state and such person is injured by the officer while acting within the scope of such officer's authority, costs incurred for medical care and treatment of the person shall be paid by the state if such care and treatment is required due to the injury and a determination has been made that the person has no other resources."

This statute does appear to conflict with *Wesley* and to premise liability on actual custody rather than on authority to hold for prosecution. However, the district court did not mention this statute in its memorandum opinion or journal entry, and the court made no finding that Thomas was injured *by* Trooper Peters. Indeed, the findings and record show that Thomas was injured when he crashed his vehicle while fleeing from Trooper Peters. Thus, K.S.A. 19-1910(b)(1) is inapplicable.

K.S.A. 22-4612 is a section of the Kansas Code of Criminal Procedure. The legislature directs that "[i]n interpreting this code, such words and phrases as are defined in this article shall be given the meanings indicated by their definitions, unless a particular context clearly requires a different meaning." K.S.A. 22-2201(1). K.S.A. 22-2202(9) defines "custody" as "the restraint of a person pursuant to an arrest or the order of a court or magistrate." There is no suggestion that the context of this case would clearly require a different meaning.

There is no question that Trooper Peters arrested and took custody of Thomas at the scene of the crash, and that Thomas was in custody when they arrived at the KU hospital. There is no evidence or finding by the trial court that Peters ever lawfully released Thomas from his custody prior to delivering him to the Wyandotte County jail.

There is no evidence or finding that Trooper Peters released Thomas from custody merely to avoid the cost of medical treatment. But there was also no evidence or finding by the district

court that Trooper Peters released Thomas after being satisfied that probable cause no longer existed or that a prosecuting attorney had given notice that no prosecution would be forthcoming. See K.S.A. 22-4613(a). Indeed, the opposite occurred here: Trooper Peters advised the hospital personnel that Thomas was left for treatment on "police hold." He returned the following day to transport Thomas to jail upon his medical discharge. Thomas arrived at and left from the hospital in handcuffs.

We conclude that, giving the term "custody" its statutory and ordinary meaning, the district court correctly determined that when Trooper Peters restrained Thomas pursuant to arrest, liability was incurred by the State under K.S.A. 22-4612. The State remained liable for expenses incurred prior to Thomas' delivery to the county jail because the terms for release set forth in K.S.A. 22-4613 were not met.

Affirmed.