No. 108,391

UNIVERSITY OF KANSAS HOSPITAL AUTHORITY and KANSAS UNIVERSITY PHYSICIANS, INC., *Appellees*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/KANSAS CITY, KANSAS, *Appellee*, v. STATE OF KANSAS—KANSAS HIGHWAY PATROL, *Appellant*.

(348 P.3d 602)

Opinion filed May 22, 2015.

*Derenda J. Mitchell*, assistant attorney general, argued the cause, and was on the briefs for appellant.

*E. Lou Bjorgaard Probasco*, of Probasco & Associates, P.A., of Topeka, argued the cause, and *Jennifer Martin Smith*, of the same firm, was with her on the briefs for appellees University of Kansas Hospital Authority and Kansas University Physicians, Inc.

*Colin S. Welsh*, assistant counsel, Unified Government of Wyandotte County/ Kansas City, Kansas, argued the cause, and *Brandelyn K. Nichols*, assistant counsel, of the same office, was with him on the brief for appellee Board of County

The opinion of the court was delivered by

LUCKERT, J.: The question presented in this case mirrors one addressed in our decision in *Wesley Med. Center v. City of Wichita*, 237 Kan. 807, 703 P.2d 818 (1985). There, a hospital attempted to collect payment from a city and a county for the medical expenses incurred in treating an indigent criminal offender brought to the hospital while in the custody of the city's police officers. The city argued the county sheriff was responsible for the care of prisoners and the county should pay the medical bills. The county argued the sheriff had never obtained physical custody of the offender and the city should pay because it did have custody. This court rejected the physical custody theory. Instead, this court imposed liability on Kansas counties for any medical expenses incurred as a consequence of and following the arrest of an indigent offender if the offender was arrested for violating a state law and in due course was charged with a state crime and delivered to the county's custody. 237 Kan. at 815.

In this appeal, we again must consider who must pay for medical treatment provided to an indigent offender for injuries sustained during an arrest—a law enforcement agency with physical custody of the offender (this time the Kansas Highway Patrol [KHP]) or a county where the offender is ultimately jailed while awaiting trial on felony charges. The issue arises anew because of the 2006 enactment of K.S.A. 22-4612, which addresses payment of medical expenses for indigent offenders in the custody of the KHP or several other governmental entities. The district court and the Court of Appeals in *University of Kan. Hosp. Auth. v. Bd. of Comm'rs of Unified Gov't*, 49 Kan. App. 2d 449, 454, 313 P.3d 60 (2013), held K.S.A. 22-4612(a) altered the *Wesley* holding by making KHP liable to pay a health care provider for health care services rendered to persons in the custody of the agency.

Both courts considered a second issue that flows from that determination: Was the indigent offender in this case in KHP's custody so as to trigger liability for the medical expenses at issue? Both

the district court and the Court of Appeals determined that KHP had custody of the offender and was liable. 49 Kan. App. 2d at 455-56.

On petition for review from the Court of Appeals' decision, we affirm the district court and Court of Appeals on both issues.

## FACTS AND PROCEDURAL BACKGROUND

The facts of this case are not in dispute. A KHP trooper stopped Wayne Thomas for speeding in Wyandotte County. When the trooper exited his patrol vehicle, Thomas sped away. An ensuing high-speed chase ended when Thomas crashed head-on into a tree. The trooper removed Thomas from his car, put him on the ground, handcuffed him, and formally placed him under arrest. Although the trooper called for an ambulance, Thomas initially refused any medical services.

After the trooper placed Thomas into his patrol vehicle and started filling out an arrest report, Thomas began complaining of pain and asked to be taken to the hospital. The trooper then drove Thomas—who remained in handcuffs—to the emergency room at Kansas University Medical Center and escorted him inside. The trooper did not remove the handcuffs until the nurses began to examine Thomas. The trooper stayed at the hospital for about an hour until the nursing staff reported that they would be keeping Thomas overnight. Thereafter, the trooper instituted a "police hold" on Thomas, which meant that he wanted the hospital to call him before releasing Thomas.

The hospital called the trooper the next day, and he picked up Thomas and took him directly to the Wyandotte County Jail. No KHP officers guarded Thomas during his hospital stay, although there was an officer from the Kansas University Police Department in Thomas' room when the trooper arrived to take Thomas to jail.

During the hospital stay, Thomas—whose indigence the parties do not challenge—incurred $23,197.29 in medical charges from the University of Kansas Hospital Authority and $2,311 from the Kansas University Physicians, Inc. (hereinafter collectively referred to as Hospital Authority). The Hospital Authority demanded payment from both the Unified Government of Wyandotte County/

Kansas City, Kansas, (County) and KHP. Both refused to pay the Hospital Authority for Thomas' expenses, each claiming it was not liable under the law.

The Hospital Authority filed suit against both the County and KHP. As the case progressed, the Hospital Authority and KHP filed motions for summary judgment. Both argued the County was responsible for the expenses under the holding in *Wesley*. The County responded by citing K.S.A. 22-4612(a), which it argued abrogated *Wesley* and, through its plain language, imposed liability on KHP. The County prevailed in its arguments before the district court and Court of Appeals. We granted KHP's petition for review. Both KHP and the Hospital Authority continue to argue the County should be liable for Thomas' medical care.

## ANALYSIS

ISSUE 1: *On what basis is a law enforcement agency liable for an indigent offender's reasonable medical expenses?*

Essentially, the parties' arguments present us with an either/or question of law: Either the County is liable for Thomas' medical bills under *Wesley* or KHP is responsible under K.S.A. 22-4612(a). Our review of this question is unlimited. See *University of Kansas Hosp. Auth. v. Board of Wabaunsee County Comm'rs*, 299 Kan. 942, 951, 327 P.3d 430 (2014) (hereinafter *Wabaunsee County*) (stating that "an unlimited appellate standard of review [applies] when considering judicial conclusions of law and questions of statutory interpretation"); see also *Stanley Bank v. Parish*, 298 Kan. 755, Syl. ¶ 1, 317 P.3d 750 (2014) ("Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."). To provide context for the parties' arguments, we begin with a discussion of *Wesley* and K.S.A. 22-4612(a). We will then discuss the parties' arguments regarding the application of each.

## 1.1 Wesley *and K.S.A. 22-4612(a)*

To add specifics to our previous summary of *Wesley*, in that case Wichita police officers attempted to arrest a man and a "gun battle" ensued, resulting in injuries to the offender. *Wesley*, 237 Kan. at 808. The officers called for an ambulance that transported the offender to the Wesley Medical Center for treatment. Wichita police officers guarded the offender at the hospital until criminal charges for state felonies were filed; after that time, the Sedgwick County sheriff's office guarded the offender until the hospital released him a couple of weeks later to the Sedgwick County jail. The offender was later transferred to the Butler County jail. Wesley Medical Center sued all parties it believed might be liable for the indigent offender's medical expenses: the offender, the City of Wichita, Butler County, and Sedgwick County. The trial court held the City of Wichita was responsible for the medical expenses from the time of injury until Sedgwick County took over guard duties and Sedgwick County was responsible for the remainder. The City appealed.

This court recognized a statutory duty to treat prisoners with humanity, meaning the governmental entity with custody of a prisoner must provide the prisoner with necessary medical care. *Wesley*, 237 Kan. at 809; see also *Wabaunsee County*, 299 Kan. at 957-58. But there was no explicit statutory provision specifying which unit of government bore the expense of paying for the treatment under the circumstances of the case. See *Wesley*, 237 Kan. at 810-15 (discussing prior cases, the interpretation given to the relevant statute by the Kansas Attorney General, other states' approaches, and legislative policy as evinced by other Kansas statutes). Sedgwick County argued liability should fall on the agency with physical custody of an indigent criminal offender when the offender received medical treatment. This court rejected the custody theory of liability, however, and held that "[t]he controlling factor is that the prisoner was arrested and subsequently charged with a violation of state law." 237 Kan. at 815. Because the offender violated state law (as opposed to a municipal ordinance), the offender would be prosecuted in state court and held by the sheriff in the county jail. Consequently, the county sheriff owed the duty to treat

the offender humanely and the county was responsible for all of the offender's medical expenses. 237 Kan. at 815-16.

As the district court and Court of Appeals recognized, if *Wesley* controls this case, Wyandotte County would be liable to pay for Thomas' medical expenses because Thomas was arrested and charged with a violation of state law. *University of Kan. Hosp. Auth.*, 49 Kan. App. 2d at 452. But both courts concluded the plain language of K.S.A. 22-4612(a) superseded *Wesley* by declaring that custody was the determinative factor for liability. 49 Kan. App. 2d at 453-54.

Under K.S.A. 22-4612(a):

"Except as otherwise provided in this section, a county, a city, a county or city law enforcement agency, a county department of corréctions *or the Kansas highway patrol shall be liable to pay a health care provider for health care services rendered to persons in the custody of such agencies* the lesser of the actual amount billed by such health care provider or the [M]edicaid rate." (Emphasis added.)

### 1.2 *K.S.A. 22-4612(a) abrogates* Wesley

Throughout these proceedings—from those before the district court to those before this court—both the Hospital Authority and KHP have argued that K.S.A. 22-4612(a) merely addresses the rate of reimbursement that applies if an entity bears the legal responsibility of paying for an offender's medical expenses, *i.e.*, the Medicaid rate is the liability cap. They insist the statute has nothing to do with determining which entity is liable. They have cited legislative history to demonstrate the legislature never discussed abrogating *Wesley*.

As their arguments suggest, the fundamental goal of statutory construction is to ascertain the intent of the legislature. *State v. Williams*, 298 Kan. 1075, 1079, 319 P.3d 528 (2014). But in determining legislative intent, the starting point is not legislative history; rather, we first look to the plain language of the statute, giving common words their ordinary meaning. See *Graham v. Dokter Trucking Group*, 284 Kan. 547, 556-57, 161 P.3d 695 (2007) ("The Court of Appeals erred in overlooking the import of this plain language in the statute, instead attempting to divine legislative intent from a review of legislative history."); see also *Wabaunsee County*,

299 Kan. at 957 (stating the " ' "best and only safe rule for ascertaining the intention of the makers of any written law, is to abide by the language they have used" ' "). If the plain language of a statute is unambiguous, we do "not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it." *Cady v. Schroll*, 298 Kan. 731, 738-39, 317 P.3d 90 (2014).

Upon examination of the language of K.S.A. 22-4612(a), we conclude—as did the district court and Court of Appeals—that the statute does two things. First, it specifies a test for determining who is responsible for paying for the medical expenses by saying that KHP or one of the other listed agencies "shall be liable to pay a health care provider for health care services rendered to persons *in the custody of such agencies*." (Emphasis added.) Second, it defines the method for calculating the amount that can be charged in such situations. K.S.A. 22-4612(a).

This plain-language reading of K.S.A. 22-4612(a) finds reinforcement in the language of K.S.A. 22-4613(a), which the legislature enacted along with K.S.A. 22-4612. L. 2006, ch. 183, secs. 1-2. K.S.A. 22-4613(a) provides: "A law enforcement officer having custody of a person shall not release such person from custody merely to avoid the cost of necessary medical treatment while the person is receiving treatment from a health care provider," except under specified circumstances. Through this legislation, the Kansas Legislature clearly adopted custody as the trigger for payment liability when an indigent offender receives medical care.

Although KHP and the Hospital Authority present five arguments in an attempt to convince us that K.S.A. 22-4612(a) is ambiguous and does not designate custody as a liability trigger, they do not succeed. The legislature clearly conveyed its intent to base liability on custody, which effectively adopted the custody test that the *Wesley* court rejected. As we will discuss in the next issue, however, there remains a long-existing ambiguity in this area of law regarding when a person is in "custody" for liability purposes. Before reaching the meaning of custody, however, we will address KHP's and the Hospital Authority's five arguments that attempt to persuade us the legislature did not change the *Wesley* holding.

First, KHP suggests the statute is ambiguous because it could be read to obligate either the County or KHP to pay for Thomas' medical expenses. But there is no ambiguity—an agency is liable for the medical expenses of a person in its custody. K.S.A. 22-4612(a). If Thomas was in KHP's custody, then KHP would be liable. If Thomas was in the County's custody, then the County would be liable.

Second, KHP attempts to circumvent the statute's plain language by arguing that under *Frick v. City of Salina*, 289 Kan. 1, 208 P.3d 739 (2009), the precedent of *Wesley* cannot be set aside unless the legislature clearly expressed its intent to supersede *Wesley* by enacting K.S.A. 22-4612(a). But KHP reads too much into the analysis in *Frick*. *Frick* did not hold the legislature must clearly and specifically express its intent to overrule precedent. Instead, this court referenced the well-established principle that "courts presume the legislature acts with knowledge of existing statutory and case law when it enacts legislation." 289 Kan. at 23. This principle may lead a court to conclude in a given circumstance that the legislature meant to overturn precedent, or, as in *Frick*, to conclude it did not. But, in either event, *Frick* should not be read to require the legislature to offer some talismanic words to the effect of "we hereby overturn . . . ." See 289 Kan. at 23-24. In addition, we note that the *Frick* court discussed the legislature's presumed familiarity with judicial precedent only after finding ambiguity in the statute at issue; in the instant case there is no such statutory ambiguity. 289 Kan. at 23.

*Frick* is also distinguishable from the instant case because it involved the interplay between precedential judicial interpretation of a particular statutory phrase and the legislature's subsequent enactment of a statute using the same phrase. See *Frick*, 289 Kan. at 23. These circumstances allowed the *Frick* court to conclude that the legislature, presumably aware of prior judicial interpretations of a particular phrase in one statute, meant for courts to similarly interpret the same phrase as subsequently used in a second statute. But *Wesley* did not interpret a statute with language similar to K.S.A. 22-4612(a). Indeed, K.S.A. 22-4612 did not exist at the time, and the *Wesley* court had to consider multiple au-

thorities before pronouncing its rule. We now must consider K.S.A. 22-4612(a), and it refers to liability based on custody. That basis for liability is in direct contradiction to the holding in *Wesley*. See *Wesley*, 237 Kan. at 812, 815 (rejecting liability based on custody). Thus, the *Wesley* decision's value as precedent does not override the plain language of K.S.A. 22-4612. *Frick* does not suggest otherwise.

Third, the Hospital Authority seeks to circumvent the clear meaning of K.S.A. 22-4612(a) by arguing that we must construe a statute designed to protect the public in light of legislative intent and interpret it to fully carry out the public purpose. See *Blue Cross & Blue Shield of Kansas, Inc. v. Praeger*, 276 Kan. 232, 248, 75 P.3d 226 (2003). From there, the Hospital Authority immediately discusses the legislative history of K.S.A. 22-4612, arguing the legislature intended to save taxpayers' money and did not intend to change the *Wesley* holding. Yet, the *Blue Cross* decision did not hold that the public policy rule overrode the language of a statute or allowed a court to look at legislative history. Rather, the *Blue Cross* court cited to language in the statute that enunciated public policy. 276 Kan. at 248.

The Hospital Authority cites nothing to suggest that public interest statutes uniquely permit us to consider legislative history in the face of unambiguous statutory language. *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013) (failure to support a point with pertinent authority is akin to failing to brief the issue and abandonment of the point). And we can discern no reason for a special rule. Further, interpreting K.S.A. 22-4612 to direct which governmental entity is liable does not implicate the statute's public purpose, which is to save tax dollars by limiting the amount a governmental entity must pay for prisoner medical treatment to the applicable Medicaid rates.

Fourth, despite unambiguous statutory language, KHP and the Hospital Authority argue various canons of construction allow us to infer legislative intent; they again suggest the legislature intended to retain the holding in *Wesley*. "But if a statute is plain and unambiguous, this court will not speculate about legislative intent or turn to canons of construction." *State v. Reese*, 300 Kan.

650, 653, 333 P.3d 149 (2014). Moreover, the cited canons support our reading of K.S.A. 22-4612(a). For example, KHP notes this court presumes the legislature acts with full knowledge of the existing law, and the Hospital Authority observes we presume the legislature does not enact useless or meaningless legislation. See *Friends of Bethany Place v. City of Topeka*, 297 Kan. 1112, 1123, 307 P.3d 1255 (2013); *In re Adoption of H.C.H.*, 297 Kan. 819, 831, 304 P.3d 1271 (2013). Consequently, we must presume the legislature understood *Wesley*, and in fact legislative history reveals *Wesley* was explained to the legislature during hearings on the bill that became K.S.A. 22-4612. Yet, the legislature chose words that departed from the holding in *Wesley*. Instead of simply stating that a cap would apply if a governmental entity was liable for an indigent criminal offender's medical bills, the legislature chose to include language that designated custody as the trigger to that liability.

Fifth, the Hospital Authority argues the district court's and Court of Appeal's reading of K.S.A. 22-4612(a) conflicts with K.S.A. 19-1910(b)(1), which imposes liability on KHP for medical bills in the limited circumstance of a KHP officer injuring an offender. The Hospital Authority cites the rule of in para materia, asking us to construe K.S.A. 22-4612(a) in workable harmony with K.S.A. 19-1910(b)(1). We have held that even when various statutory provisions are independently unambiguous, we will construe them in para materia. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013). To reconcile the provisions, the Hospital Authority essentially argues we should import the restrictive language from K.S.A. 19-1910(b)(1) into K.S.A. 22-4612(a) so that KHP is only liable when it is responsible for injuring a person. We need not do so, however, in order to give meaning to the unambiguous language of K.S.A. 22-4612(a).

The legislature used limiting language in drafting K.S.A. 19-1910(b)(1). But in enacting K.S.A. 22-4612(a)—with presumed knowledge of K.S.A. 19-1910, which it had enacted the previous legislative session—the legislature chose not to use the same limiting language. We presume that difference to have been intentional. Further, the circumstances described in K.S.A. 19-1910 and

K.S.A. 22-4612(a) are not mutually exclusive: KHP can be responsible for expenses when its officers injure an individual, even if the individual is not in KHP's custody when treatment is sought, and it can be responsible if an indigent offender is in its custody when medical treatment is rendered, even if a KHP officer did not injure the individual.

In summary, K.S.A. 22-4612(a) clearly states that any of the listed agencies, including KHP, "shall be liable to pay a health care provider for health care services rendered to persons *in the custody of such [agency]*." (Emphasis added.) The Hospital Authority and KHP fail to argue how we can construe the statutory language of K.S.A. 22-4612(a) to mean anything other than what it says. We, therefore, conclude the Court of Appeals and the district court were correct in holding that K.S.A. 22-4612(a) abrogated *Wesley*. See *Wabaunsee County*, 299 Kan. at 954-55 (statutes concerning payment obligations for medical services provided to indigent offenders control over conflicting caselaw). KHP is liable for Thomas' medical expenses if it had custody of Thomas.

ISSUE 2: *Did KHP have custody of Thomas for liability purposes?*

KHP claims that it did not have custody of Thomas even if K.S.A. 22-4612(a) potentially imposed liability on it. But KHP concedes that a KHP trooper arrested Thomas. Plus, the trooper handcuffed Thomas and placed him in the back of a patrol car, gaining physical custody over Thomas.

Elsewhere in chapter 22, the legislature defined "custody" as "the restraint of a person *pursuant to an arrest* or the order of a court or magistrate." (Emphasis added.) K.S.A. 22-2202(9). Similarly, "arrest" is "the taking of a person *into custody* in order that the person may be forthcoming to answer for the commission of a crime." (Emphasis added.) K.S.A. 22-2202(4). At the least, under the plain meaning of the statutes, a person is in custody when under arrest. *Wabaunsee County*, 299 Kan. at 959. Thomas clearly was in KHP's custody when he requested medical treatment and when a KHP trooper delivered him in handcuffs to the Hospital Authority.

Nevertheless, KHP argues that Thomas was not in its custody when the Hospital Authority treated him because the KHP trooper had removed Thomas' handcuffs before treatment and did not guard him throughout the hospitalization. KHP essentially contends that a person is in custody for liability purposes only so long as an agency physically restrains the person.

KHP's argument reflects the ambiguity we previously mentioned: What did the legislature mean when it used the word "custody" and at what point in time is custody determined? This ambiguity existed before the enactment of K.S.A. 22-4612 and has been the subject of analysis in *Wabaunsee County* and several Court of Appeals opinions. See *Wabaunsee County*, 299 Kan. at 954 (noting custody was trigger for common-law duty to provide medical care and under the Kansas statutes at issue in that case); see *Allen Memorial Hosp. v. Board of Butler County Comm'rs*, 12 Kan. App. 2d 680, 753 P.2d 1302 (1988); *Dodge City Med. Center v. Board of Gray County Comm'rs*, 6 Kan. App. 2d 731, 634 P.2d 163 (1981); *Mt. Carmel Medical Center v. Board of County Commissioners*, 1 Kan. App. 2d 374, 566 P.2d 384 (1977). Contrary to KHP's argument about the necessity for physical restraint, in the cases decided by the Court of Appeals, the court found a person to be in custody for a county's medical liability purposes absent posted guards, physical restraint, or even arrest.

In the earliest of these cases—*Mt. Carmel Medical Center*—a prisoner injured himself when he escaped by jumping out of a courthouse window. With agreement from a sheriff's deputy, the prisoner was taken to the hospital by ambulance, and once discharged from the hospital was allowed to stay with his parents while recovering. The sheriff posted no guards. Despite the fact the prisoner was not in the county's physical custody throughout the hospital stay—*i.e.*, when the hospital treated him—and was not immediately returned to custody when discharged from the hospital, the Court of Appeals found the county liable for the medical expenses, making at least two points important to our analysis. First, the court identified "[t]he determinative factor is whether [the prisoner] was in custody when the decision was made to transport [him] to the hospital." Additionally, the court found physical cus-

tody during the hospitalization to be immaterial: "[O]nce the duty to furnish medical care attaches, the hospital's claim cannot be defeated by the sheriff's failure to carry out his sworn duties due to the lack of manpower." 1 Kan. App. 2d at 379.

Similarly, in *Dodge City* and *Allen Memorial* the Court of Appeals, at least implicitly, focused on the point in time when the decision was made to transport an indigent individual to the hospital. In *Allen Memorial*, sheriff's officers took an intoxicated person into protective custody and placed him in the county jail overnight. During the night, the man experienced a seizure that prompted the jailer to call an ambulance. The court found the man to be in the sheriff's custody for liability purposes even though he was never under arrest and had no obligation to return to jail after receiving the medical treatment.

In *Dodge City*, a sheriff's deputy shot a burglar and then summoned an ambulance. The burglar was not arrested or guarded during his 3-week stay at the hospital. Nevertheless, the court noted that the sheriff would have pursued the burglar if he fled the hospital. As well, the doctors were to advise the sheriff before releasing the burglar. The doctors did so, and the sheriff arrested the burglar at his release. Ultimately, the court held:

"Where a suspect is apprehended in the commission of a felony, felled by an officer's gunshots, and taken to a hospital by the sheriff, the suspect is 'in custody' while hospitalized for the purpose of determining the county's liability for his medical expenses even though he has not been formally arrested or kept under guard." 6 Kan. App. 2d 731, Syl. ¶ 2.

The focus of these cases on the point in time when medical care is initiated is consistent with this court's recognition that the obligation to provide medical care is rooted in the government's duty to treat prisoners with humanity. *Wesley Med. Center v. City of Wichita*, 237 Kan. 807, 809, 703 P.2d 818 (1985); see *Wabaunsee County*, 299 Kan. at 957-58; see also *Youngberg v. Romeo*, 457 U.S. 307, 317, 324, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982) ("As a general matter, a State is under no constitutional duty to provide substantive services for those within its border," but "[w]hen a person is institutionalized—and wholly dependent on the State"— he or she has "postcommitment interests cognizable as liberty in-

terests under the Due Process Clause of the Fourteenth Amendment."); *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (Eighth Amendment to the United States Constitution requires government to provide medical care to those it punishes by incarceration because "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.").

Here, because Thomas was under arrest and in the KHP trooper's custody, he had no ability to seek medical care on his own. He was wholly dependent on the trooper. Under the law discussed in past Kansas appellate decisions, this means a governmental entity became liable for Thomas' medical care since he was both a prisoner and indigent. Nothing in K.S.A. 22-4612(a) alters this past approach, and we presume that the legislature understood the law when it enacted K.S.A. 22-4612(a).

Consistent with these past authorities, we hold that under K.S.A. 22-4612(a) the obligation of one of the statutorily specified governmental entities, such as the KHP, to pay for the medical expenses of an indigent criminal offender is triggered by the entity having custody of the indigent offender at the time the decision is made to obtain medical treatment for the offender. Because the KHP trooper had placed Thomas under arrest and took Thomas into physical custody, KHP is that governmental agency in this case and is liable. See K.S.A. 22-2202(4), (9); *University of Kansas Hosp. Auth. v. Board of Wabaunsee County Comm'rs*, 299 Kan. 942, 959, 327 P.3d 430 (2014).

Given that Thomas was under arrest, we need not discuss the outer parameters of what might constitute custody. We do note, however, that arrest might not always be necessary.

KHP also suggests that liability can shift if custody transfers to another entity. It then contends that Thomas was actually in custody of the Kansas University (KU) Police Department when he received treatment. We need not resolve this legal issue because the necessary factual basis was not established in KHP's motion for summary judgment; nor has it argued that summary judgment is precluded because the facts on this point are controverted. See *Parish*, 298 Kan. 755, Syl. ¶ 1 (summary judgment movant must

establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law; party opposing motion must come forward with evidence to establish a dispute as to a material fact). KHP relies on the fact a KU police officer was present in Thomas' room when the trooper arrived to take Thomas to jail. But the presence of an officer alone is not enough to conclude, as a matter of law, that KU police had custody of Thomas. KHP did not establish how long the KU police officer had been present, the purpose of the officer's presence in Thomas' room, or the nature of the officer's authority.

Also, KHP takes issue with the Court of Appeals' citation to K.S.A. 22-4613(a), arguing that the Court of Appeals improperly shifted the burden to KHP to prove it was not liable for Thomas' medical expenses. Although we do not read the Court of Appeals decision as burden shifting, K.S.A. 22-4613(a) does not apply in this case under our holding. Thomas was in the KHP officer's custody when the decision was made to seek treatment.

## CONCLUSION

Thomas was under arrest and in KHP's custody at the time he was taken to the hospital for treatment. Based on that custody, KHP was liable for Thomas' reasonable medical expense under K.S.A. 22-4612(a), which superseded the holding in *Wesley*. The district court correctly granted the Hospital Authority's motion for summary judgment, and the Court of Appeals correctly affirmed the district court's resolution of the case.

Affirmed.