IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,472

UNIVERSITY OF KANSAS HOSPITAL AUTHORITY,
*Appellee/Cross-appellant*,

v.

BOARD OF COUNTY COMMISSIONERS FOR FRANKLIN COUNTY, KANSAS,
*Defendant/Cross-appellee*,
and
CITY OF OTTAWA, KANSAS,
*Appellant/Cross-appellee*.

SYLLABUS BY THE COURT

1.

When the material facts are uncontroverted, an appellate court reviews a decision granting summary judgment de novo.

2.

Under K.S.A. 2020 Supp. 22-4612(a), the obligation of one of the statutorily specified governmental entities, such as the city law enforcement agency, to pay for the medical expenses of an indigent criminal offender is initially triggered by the entity having custody of the indigent offender at the time the decision is made to obtain medical treatment for the offender.

3.

A person is in custody when under arrest, although arrest might not always be necessary to establish custody.

1

4.

Applying K.S.A. 2020 Supp. 22-4612 to the stipulated facts, no law enforcement agency had custody over the patient at the time the decision was made to obtain medical treatment for the patient.

Review of the judgment of the Court of Appeals in 58 Kan. App. 2d 367, 468 P.3d 806 (2020). Appeal from Wyandotte District Court; ROBERT P. BURNS, judge. Opinion filed September 10, 2021. Judgment of the Court of Appeals reversing the district court and remanding the case is affirmed in part and reversed in part. Judgment of the district court is reversed, and the case is remanded with directions.

*David R. Cooper*, of Fisher, Patterson, Sayler & Smith, LLP, of Topeka, argued the cause, and *Jeannette L. Wolpink* and *Michael K. Seck*, of the same firm, of Overland Park, were with him on the briefs for appellant/cross-appellee.

*Jennifer Martin Smith*, of Alderson, Alderson, Conklin, Crow & Slinkard, L.L.C., of Topeka, argued the cause and was on the briefs for appellee/cross-appellant.

*Patric S. Linden*, *Kevin D. Case*, and *Cory R. Buck*, of Case Linden P.C., of Kansas City, Missouri, were on the briefs for cross-appellee.

The opinion of the court was delivered by

STANDRIDGE, J.: A Kansas statute requires a city or county to pay a health care provider for health care services rendered to an indigent person in the custody of a city or the city's law enforcement agency. Relying on this statute, the University of Kansas Hospital Authority (KUHA) sued the City of Ottawa (City) seeking to recover the cost of medical treatment provided to an indigent patient who was injured in a car crash. Based on the stipulated facts, however, we conclude the City is not obligated to pay the patient's medical expenses because the patient was not in the custody of the City's law

enforcement agency at the time the decision was made to obtain medical treatment for the patient.

## FACTS

The parties filed a stipulation of facts to be used "for all purposes" in this matter. The following facts are drawn from that stipulation:

- On March 31, 2014, Ottawa Police Officer Casey Gillmore arrested the patient for driving while suspended, possession of methamphetamine, and possession of drug paraphernalia. The officer transported the patient to the Franklin County Detention Center. The patient later was released before the car crash at issue.

- On April 1, 2014, Officer Gillmore was in his patrol vehicle at the intersection of Wilson and Main Streets when Ottawa Police Sergeant A.J. Schmidt radioed him. Sergeant Schmidt stated that he saw the patient driving on Main Street and asked whether the patient had a suspended driver's license.

- Officer Gillmore then observed a dark colored SUV traveling on Main Street at a high rate of speed without headlights.

- After activating his emergency lights and sirens, Officer Gillmore pursued the SUV. Officers later learned that the patient was driving the SUV.

- During the pursuit, Officer Gillmore recognized the SUV as a purple Ford Expedition that the patient's girlfriend owned.

3

- As Officer Gillmore reached city limits, he observed another police vehicle's emergency lights activate. Officer Gillmore knew that Ottawa Police Officer Joshua Pence was driving northbound on the same roadway toward the Douglas/Franklin County line to meet a Douglas County deputy for prisoner transport.

- As Officers Gillmore and Pence approached the on-ramp to U.S. 59 Highway, they both observed the patient's vehicle entering the off-ramp of that highway and begin speeding in the wrong direction.

- Sergeant Schmidt directed the officers to stay with the patient's vehicle until Stafford Road and then discontinue the pursuit.

- Stafford Road is generally at the Ottawa city limits.

- Officers Gillmore and Pence observed the patient's vehicle exit the highway near Stafford Road using the on-ramp.

- As the officers exited the highway at Stafford Road, the officers no longer saw the patient's vehicle.

- After traveling northbound a short distance on Old 59 Highway, the officers discontinued the pursuit.

- Soon after, a Franklin County sheriff's deputy advised by radio that there appeared to be a grass fire near the intersection of U.S. 59 Highway and Stafford Road caused by a vehicle that had caught on fire.

4

- Sergeant Schmidt said that he would respond to the area of the fire.

- Franklin County Sheriff Deputies Shane Pruitt, Jesse Vega, and Ricky Wilson, as well as Sheriff Jeff Richards and Undersheriff Rick Geist, all responded to the crash location.

- Officer Pence continued to the Douglas County line for prisoner transport.

- Officer Gillmore returned to the Ottawa city limits.

- Sergeant Schmidt proceeded to the accident scene, exited his patrol vehicle, and walked toward the fire.

- As Sergeant Schmidt entered the ditch, he observed a male and female subject coming toward him who appeared injured. He also heard another individual, later identified as the patient, screaming as Franklin County sheriff's deputies tried to move the patient from the fire.

- One of the deputies yelled at Sergeant Schmidt for assistance, and he ran to the area of the fire with a firefighter who had arrived on scene.

- The deputies and Sergeant Schmidt moved the patient from the vehicle and part way up the embankment.

- Sergeant Schmidt had the authority to arrest the patient at the crash location, even though it was outside the Ottawa city limits.

- Because the patient's arrest the day before involved possession of methamphetamine, Sergeant Schmidt told the patient that if he had taken anything that day, EMS needed to know about it for his treatment.

- Sergeant Schmidt heard the patient tell EMS that the patient used methamphetamine that day. EMS personnel began treating the patient and ultimately placed him inside an ambulance. EMS personnel facilitated the transport of the patient to the KU Medical Center by helicopter.

- At no time before the patient's transport was he placed under arrest by any law enforcement officer.

- At no time before the patient's transport was he searched by any law enforcement officer.

- KUHA provided medical treatment to the patient from April 1, 2014, through April 11, 2014.

- While at KU Medical Center, the Wyandotte County deputies placed the patient on a police hold and guarded him because of several criminal cases in Wyandotte County.

- Wyandotte County deputies took the patient to the Wyandotte County Jail when he was discharged from KU Medical Center, and Wyandotte County held him there on various warrants and a parole violation.

- On April 17, 2014, Officer Gillmore interviewed the patient at the Wyandotte County Jail about the events leading up to the crash.

- The Franklin County prosecutor ultimately prosecuted the patient for fleeing and eluding and other crimes committed during the events surrounding his accident and injury.

- KUHA claims the amount for medical treatment provided to the patient is $71,826.95.

- The patient has no insurance available to compensate KUHA for the patient's medical treatment.

KUHA ultimately sued the City and the County, alleging one or both entities needed to pay the patient's outstanding hospital bill under K.S.A. 2020 Supp. 22-4612(a). This statute requires certain government agencies to pay the medical expenses a person incurs when he or she is in custody of that agency. All three parties filed motions for summary judgment based on the stipulated facts. The district court granted summary judgment for KUHA on its claims against the City. Relying on K.S.A. 8-2104, the court found the patient was in Ottawa police custody because the officers would have been required to take the patient into custody but for his injuries. The district court denied summary judgment on KUHA's claims against the County. In the end, the district court held the City exclusively liable for the patient's medical expenses in the amount of $71,826.95. Both KUHA and the City appealed.

A Court of Appeals panel affirmed the district court's finding that the County was not liable for the unpaid medical expenses. KUHA has not appealed that decision, so the County's liability is not at issue. But the panel reversed the district court's decision to grant summary judgment on KUHA's claims against the City. In finding summary judgment against the City, the district court ruled that the Ottawa Police Department (OPD) ultimately had custody of the patient because OPD had a legal duty under K.S.A.

7

8-2104 to arrest him at the accident scene after witnessing him commit felony fleeing and eluding. The panel rejected this ruling, finding instead that K.S.A. 8-2104(d) requires an officer to make a traffic stop before an officer's duty to arrest an individual for a felony traffic offense is triggered. The panel questioned whether a traffic stop occurred in this case and explained that neither party stipulated to any facts establishing that the OPD stopped the patient under K.S.A. 8-2104. Even if the patient had not been stopped, the panel pointed out there were insufficient facts to determine whether OPD had custody of the driver when he was taken to the hospital. Because of these residual questions, the panel found there were genuine issues of material fact precluding summary judgment. The panel determined a remand was necessary to give the parties an opportunity to submit additional facts and, in turn, to give the district court an opportunity to make findings of fact based on those submissions. *Univ. of Kansas Hosp. Auth. v. Board of Franklin County Comm'rs*, 58 Kan. App. 2d 367, 376-79, 468 P.3d 806 (2020).

KUHA filed a petition for review of the panel's decision, arguing that there are no more facts to submit and that the City is liable for the unpaid medical expenses. The City filed a cross-petition for review challenging the district court's decision to grant summary judgment in KUHA's favor and the Court of Appeals' finding that the City officers may have had a mandatory duty under K.S.A. 8-2104 to arrest the patient at the accident scene.

ANALYSIS

At issue is the district court's order for summary judgment in favor of KUHA against the City, which the Court of Appeals reversed. When the material facts are uncontroverted, an appellate court reviews a decision granting summary judgment de novo. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018).

"""'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied."' [Citation omitted.]" *Trear*, 308 Kan. at 935-36.

As part of our analysis, we will interpret and apply K.S.A. 2020 Supp. 22-4612(a) to undisputed facts. When engaging in statutory interpretation, we exercise unlimited review. *Redd v. Kansas Truck Ctr.*, 291 Kan. 176, 187, 239 P.3d 66 (2010).

*K.S.A. 2020 Supp. 22-4612(a)*

We begin our analysis with K.S.A. 2020 Supp. 22-4612(a), which provides that "a county, a city, a county or city law enforcement agency, a county department of corrections or the Kansas highway patrol *shall be liable to pay a health care provider for health care services rendered to persons in the custody of such agencies*." (Emphasis added.)

We have previously interpreted this statute as a test for determining who pays for medical expenses in cases like the one here. See *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 999, 348 P.3d 602 (2015). Under this test, a law enforcement agency is responsible for an indigent offender's outstanding medical bills if that agency had custody over the offender "*at the time the decision* [*was*] *made to obtain medical treatment for the offender*." (Emphasis added.) 301 Kan. at 1006.

Determining which agency, if any, had custody over the patient necessarily requires statutory interpretation. The most fundamental rule of statutory construction is that the Legislature's intent governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). This court first must attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, this court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Nauheim v. City of Topeka*, 309 Kan. 145, 149-50, 432 P.3d 647 (2019).

Although K.S.A. 2020 Supp. 22-4612(e) defines the terms "county or city law enforcement agency," "health care provider," and "Medicaid rate," the statute does not define the word "custody." The Kansas Code of Criminal Procedure (KCCP) defines "custody" as "the restraint of a person pursuant to an arrest or the order of a court or magistrate." K.S.A. 2020 Supp. 22-2202(i). And the KCCP defines "arrest" as "the taking of a person into custody in order that the person may be forthcoming to answer for the commission of a crime." K.S.A. 2020 Supp. 22-2202(d). As KUHA points out in its petition, this circular language creates some ambiguity as to the meaning of custody as used in K.S.A. 2020 Supp. 22-4612(a). We have recognized this ambiguity. See *Board of Comm'rs of Unified Gov't*, 301 Kan. at 999 ("[T]here remains a long-existing ambiguity in this area of law regarding when a person is in 'custody' for liability purposes."). In *Board of Comm'rs of Unified Gov't*, we found that—at the very least—a person is in custody when that person is under arrest. 301 Kan. at 1003.

Here, the undisputed facts establish that the OPD did not arrest the patient. OPD officers may have pursued the patient, but the pursuit ended without effectuating a traffic stop, let alone an arrest. At the accident scene, Sergeant Schmidt simply helped county deputies carry the patient to safety, at which point the EMTs arrived and initiated medical

10

treatment. While Schmidt directed the patient to tell EMTs if he was on any drugs, this was simply a treatment-related directive. Schmidt did not act on the information that the patient provided to the EMTs, did not handcuff the patient, did not *Mirandize* the patient, did not tell the patient he was under arrest, and did not arrest the patient. No one from OPD followed the patient to the hospital in Wyandotte County. Once at the hospital, Wyandotte County police officials—not OPD officials—placed a custodial hold on the patient because of several outstanding warrants in Wyandotte County. Wyandotte County officers also guarded the patient until his release to Wyandotte County's custody. When released from the hospital, Wyandotte County deputies transported the patient to the Wyandotte County Jail to answer for the charges outlined in the warrants. While OPD continued to investigate the accident—e.g., an OPD officer visited the patient in the Wyandotte County Jail and interviewed him about the incident—and the Franklin County prosecutor later filed various charges against the patient (including felony fleeing and eluding), these facts do not support a finding that OPD effectuated an arrest. Rather, the facts establish OPD officers did not conduct a traffic stop, did not arrest the patient at the accident scene, investigated the incident while the patient was in the hospital, and turned the file over to the prosecutor to determine whether to file charges.

Because OPD did not arrest the patient at the scene, we must determine whether OPD otherwise had custody of the patient at the time the decision was made to obtain medical treatment for him. Based on the plain meaning of K.S.A. 2020 Supp. 22-2202(i), custody can mean only one of two things: (1) the restraint of a person pursuant to an arrest, or (2) the restraint of a person pursuant to a court or magistrate order. Because we have found OPD never arrested the patient, then the only other way the patient could have been "in custody" is if he was restrained pursuant to a court or magistrate order. There is no indication in the record that such an order exists. The simplest finding based on the Legislature's construction of K.S.A. 2020 Supp. 22-2202(i) is that OPD never had

11

custody of the patient. If it did not have custody, then it cannot be liable under K.S.A. 2020 Supp. 22-4612(a).

But as explained above, we have previously recognized that the definition of custody has created some ambiguity in determining liability under K.S.A. 2020 Supp. 22-4612(a). See *Board of Comm'rs of Unified Gov't*, 301 Kan. at 999. In fact, we explicitly stated that arrest may not always be necessary to effectuate custody. 301 Kan. at 1006 ("Given that [the patient] was under arrest, we need not discuss the outer parameters of what might constitute custody. We do note, however, that arrest might not always be necessary."). What is more, K.S.A. 22-2201(1) suggests that the definition of custody in K.S.A. 2020 Supp. 22-2202(i) should be construed in context. See K.S.A. 22-2201(1) ("In interpreting this code, such words and phrases as are defined in this article shall be given the meanings indicated by their definitions, unless a particular context clearly requires a different meaning.").

Given the ambiguity described above, the parties ask us to define the outermost boundaries of what constitutes custody. But providing a hard and fast definition of custody as used in K.S.A. 2020 Supp. 22-4612(a) is unnecessary to decide the issue presented by the parties to the district court on summary judgment: whether OPD had custody of the patient at the time the decision was made to obtain medical treatment for him. While other cases have found that custody applies in situations other than arrest, no Kansas case has found custody in a situation under the facts to which the parties stipulated in this case.

In *Stormont-Vail Healthcare v. Board of Jackson County Comm'rs*, No. 117,650, 2018 WL 2170117, at *3 (Kan. App. 2018) (unpublished opinion), a Court of Appeals panel determined that a patient was in custody based on, among other things, a long chase after which the patient surrendered to the officer's authority. But the factual basis that the

panel relied on to find custody is inapplicable under the stipulated facts here. Although there was a chase in both cases, the parties specifically stipulated here that the chase was discontinued. In *Stormont-Vail Healthcare*, the officer never stopped pursuing the patient, and, in fact, continued on foot after the patient crashed his vehicle. *Stormont-Vail Healthcare*, 2018 WL 2170117, at *1. Moreover, the patient here never surrendered to the officers' authority—he simply crashed his car at some point after the officers discontinued the chase. This factual scenario differs from one in which an individual "stopped, turned around to face the officer, and raised his arms in surrender." *Stormont-Vail Healthcare*, 2018 WL 2170117, at *1. The *Stormont-Vail Healthcare* court noted that

> "the officer chased [the patient] down, told him to stop, saw him raise his hands in surrender, took his billfold and ID, and called in medical personnel to examine [the patient].
>
> "As a factual matter, [the officer] had custody of [the patient] at that point. [The officer] decided where and when [the patient] could move, whether medical personnel could approach him, and whether medical personnel could take [the patient] to the hospital." *Stormont-Vail Healthcare*, 2018 WL 2170117, at *2.

Here, the officers did not chase the patient down, the officers did not tell the patient to stop, the patient did not raise his hands in surrender, the officers never searched the patient, the officers did not decide where and when the patient could move, the officers did not control medical personnel's approach, and the officers did not control the medical personnel's transport of the patient to the hospital.

In interpreting the statutory obligation of an entity having custody of an indigent offender to pay for the offender's medical expenses under K.S.A. 2020 Supp. 22-4612(a), we held in *Board of Comm'rs of Unified Gov't*, that the obligation "is rooted in the

government's duty to treat prisoners with humanity." 301 Kan. at 1005; see also K.S.A. 19-1919 ("All prisoners shall be treated with humanity, and in a manner which promotes their reform."); *Wesley Med. Ctr. v. City of Wichita*, 237 Kan. 807, 809, 703 P.2d 818 (1985) ("Kansas cases have consistently held that a prisoner's rights include entitlement to medical care at the governmental agency's expense, if the prisoner is indigent and no other source of funds is available."), *superseded by statute as stated in Board of Comm'rs of Unified Gov't*, 301 Kan. at 1003. As an example, we said:

> "Here, because [the patient] was under arrest and in the [Kansas Highway Patrol] trooper's custody, he had no ability to seek medical care on his own. He was wholly dependent on the trooper. Under the law discussed in past Kansas appellate decisions, this means a governmental entity became liable for [the patient's] medical care since he was both a prisoner and indigent. Nothing in K.S.A. 22-4612(a) alters this past approach, and we presume that the legislature understood the law when it enacted K.S.A. 22-4612(a)." *Board of Comm'rs of Unified Gov't*, 301 Kan. at 1006.

Here, the stipulated facts show the opposite is true. Officers Pence and Gillmore—the only two officers who pursued the patient—discontinued the chase. Officer Pence continued to the Douglas County line for a prisoner transport, and Officer Gillmore returned to the Ottawa city limits. Soon after, a Franklin County sheriff's deputy radioed dispatch about a car that had caught fire near the intersection of U.S. 59 Highway and Stafford Road. Sergeant Schmidt—who had been in contact by radio with the officers pursuing the patient but had not personally pursued the patient—said that he would respond to the fire. Sergeant Schmidt proceeded to the accident scene and upon exiting his patrol vehicle, one of the sheriff's deputies yelled for him to help move the patient from the vehicle and part way up the embankment. At that point, EMS personnel arrived and began treating the patient. EMS personnel placed the patient in an ambulance and facilitated his transport to the KU Medical Center by helicopter. Under these facts, the patient's ability to seek medical care on his own from KU Medical Center was not an

14

issue because EMS had arrived, was treating him, and ultimately placed him in an ambulance and facilitated his transport to the hospital. The stipulated facts establish that the patient was not wholly, or even partially, dependent on Sergeant Schmidt or any City law enforcement officer to obtain medical care for injuries he sustained in his car accident.

Applying the law discussed in past Kansas appellate decisions to the stipulated facts presented here, we hold OPD never had custody of the patient under K.S.A. 2020 Supp. 22-4612(a). The City is therefore not liable for the patient's unpaid medical expenses.

*K.S.A. 8-2104*

Although the controlling statute here is K.S.A. 2020 Supp. 22-4612, the district court based its decision to grant summary judgment in favor of KUHA on K.S.A. 8-2104. First, it found OPD had a statutory duty under K.S.A. 8-2104 to arrest the patient at the accident scene because OPD officers witnessed the patient commit felony fleeing and eluding. Based on this legal finding, the district court then found OPD essentially had constructive custody over the patient under K.S.A. 2020 Supp. 22-4612(a) for liability purposes.

The panel analyzed this issue at some length. It ultimately concluded that the statutory duty to arrest for a felony traffic offense is triggered *not* after witnessing a felony fleeing and eluding offense but instead after the officer has conducted a traffic stop. The panel suggested that there were not enough facts in the record to conclude whether a traffic stop ever occurred in this case; so, it reversed the summary judgment finding against the City and remanded the case to the district court for further factual findings on the issue. *Franklin County*, 58 Kan. App. 2d at 377-79.

15

In its cross-petition for review, the City asserts that an officer's decision to arrest an individual is discretionary. It also argues that K.S.A. 8-2104 does not require an officer to arrest a person for felony DUI or felony fleeing and eluding. This latter argument derives from the City's interpretation of K.S.A. 8-2104(a) and (d), which provide:

"(a) When a person is stopped by a law enforcement officer for any violation of any provision of the uniform act regulating traffic on highways not amounting to a felony, the person *shall* be taken into custody and taken without unnecessary delay before a judge of the district court, as specified in subsection (d) of K.S.A. 8-2106, and amendments thereto, if . . . (2) such person is to be charged with a violation of K.S.A. 8-1567 and 8-1568, and amendments thereto.

. . . .

"(d) When any person is stopped by a law enforcement officer and is to be charged with violation of any statute defining a traffic violation which is a felony, the person *shall* be taken without unnecessary delay before a judge of the district court as specified in subsection (d) of K.S.A. 8-2106, and amendments thereto." (Emphasis added.)

The opinions rendered by the district court and the panel, as well as the parties' arguments on this issue to this court on review, raise provocative issues under K.S.A. 8-2104, including whether the Legislature has the legal authority to divest a law enforcement officer of all discretionary executive powers and require that officer to arrest an individual under a particular set of facts. But resolving those thorny issues is unnecessary to the issue presented in this case:  whether OPD had custody over the patient under K.S.A. 2020 Supp. 22-4612(a). The issue is *not* whether OPD *could have* or *should have had* custody over the patient at the time the decision was made to obtain

16

medical treatment for the patient. The issue is whether the agency *had* custody over the patient:

> "[A] county, a city, a county or city law enforcement agency, a county department of corrections or the Kansas highway patrol shall be liable to pay a health care provider for health care services rendered to persons *in the custody* of such agencies the lesser of the actual amount billed by such health care provider or the medicaid rate." (Emphasis added.) K.S.A. 2020 Supp. 22-4612(a).

Given the clear and unambiguous language of K.S.A. 2020 Supp. 22-4612(a), we find K.S.A. 8-2104 is inapplicable to the legal issue presented for decision here. Given the potential for misapplication of the panel's holding related to K.S.A. 8-2104, we also find it necessary to express our disapproval of the following legal principle stated in the Court of Appeals' opinion:

> "Under K.S.A. 8-2104(d), when a person is stopped by law enforcement for felonious traffic offenses, law enforcement has a legal duty to arrest the offender—to take the offender into custody and bring him or her before a judge. The officer conducting the stop has no discretion whether to take the offender into custody." *Franklin County*, 58 Kan. App. 2d 367, Syl. ¶ 6.

For all the reasons stated above, (1) we reverse the district court's summary judgment finding in favor of KUHA against the City; (2) while we agree with the Court of Appeals' decision to reverse the summary judgment finding, we disapprove of the underlying rationale and remand instructions, and therefore reverse those findings and instructions; and (3) we remand the case to the district court with directions to deny KUHA's summary judgment motion and enter summary judgment in favor of the City.

17

Judgment of the Court of Appeals reversing the district court and remanding the case is affirmed in part and reversed in part. Judgment of the district court is reversed, and the case is remanded with directions.