NOT DESIGNATED FOR PUBLICATION

No. 117,487

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of
C.B., a Minor Child.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN M. SMITH, judge. Opinion filed October 20, 2017. Affirmed.

*Anita Settle Kemp*, of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before STANDRIDGE, P.J., PIERRON and ATCHESON, JJ.

PER CURIAM: The natural father of C.B. (Father) appeals the district court's termination of his parental rights. Prior to terminating the parental rights of a parent, the district court must find by clear and convincing evidence that the parent is unfit, the conduct or a condition which renders the parent unfit is unlikely to change in the foreseeable future, and the termination of parental rights is in the best interests of the child. K.S.A. 2016 Supp. 38-2269(a), (g)(1). We are asked to determine whether the district court's decision is supported by the evidence. Finding that it is, we affirm.

In March 2016, Father was arrested for domestic violence where he was alleged to have struck Mother in the face while he was driving. C.B., who was two years old, was in the backseat at the time. Mother reported to police that they were traveling to buy methamphetamine. The next day, Mother filed for a protection from abuse (PFA) order against Father.

1

Two months later, Mother was pushing C.B. in a stroller in a dangerous manner. Police responded to a welfare check on Mother and C.B. While speaking with police Mother reported that she had used methamphetamine that morning. Police left C.B. in the care of maternal grandmother who took C.B. to her home.

Two days later, the Department for Children and Families (DCF) received a report that C.B. was not being supervised by Mother or Father and had been placed in the care of maternal grandmother and stepgrandfather. The following week, C.B. tested positive for methamphetamine.

At roughly the same time, Father was placed on probation for a charge of domestic battery against Mother. As part of his probation Father was ordered not to consume illegal drugs or alcohol, to complete outpatient treatment at Comcare, and obtain a batterer's intervention program assessment. Father was ordered to report to the Day Reporting Center (DRC) on December 12, 2016. Father did not report to DRC until December 23, 2016. Father provided a urinalysis (UA) on December 23, 2016, that was positive for methamphetamines and amphetamines. He provided an additional UA that was positive for alcohol on January 10, 2017. Father's probation officer testified that he had been noncompliant with the terms of his probation since its inception.

Shortly after C.B. tested positive for methamphetamine, the State filed a petition alleging C.B. was a child in need of care, and a temporary custody hearing was held. Father was present at the courthouse before the hearing, met with his court services officer and his attorney, but he left before the hearing. Father was found in default. The district court found that it was in the best interests of C.B. to remain in temporary custody of DCF. The district court also ordered that Father would not have visitation until he had submitted a UA and a hair follicle for testing.

An adjudication hearing was held in July 2016. Father did not appear at the adjudication hearing and was found to be in default. The district court found that neither

parent had requested visits with C.B. nor attended the original case plan meeting. When Father was asked to submit to a UA he "flipped out, lost his temper, and fled." The court found that it was in the best interests of C.B. that she be placed in the custody of DCF.

The State filed a motion to terminate Mother and Father's parental rights, and a termination hearing was held on January 30, 2017. Father was present for the morning of the termination hearing but did not return after the lunch break. He was overheard saying he was being "railroaded" and it would not do him any good to return. Father did not present any evidence at the termination hearing.

At the termination hearing, Mother testified she had filed a PFA in August of 2015 because Father "threatened to put a bullet in [her] head." Additionally, Father had given her a black eye that required her to go to the hospital. Father had broken Mother's nose a few years before the hearing. Mother testified she began using methamphetamine when she first met Father. Father was using methamphetamine before meeting Mother.

Heather Wood, a social worker with St. Francis Community Services, testified Father failed to arrive at required meetings on schedule and when he did arrive it was often days later. Wood explained several of the meetings were worker/parent meetings, which are monthly meetings to review the achievement plan, explain court orders, and discuss issues with completing orders. Wood also testified that Father would often submit UAs late or not at all. Wood recommended termination of parental rights, noted that C.B. was "severely delayed educationally, and she ha[d] about 35 to 40 words in her vocabulary. She need[ed] an extremely structured environment in order to thrive." Wood was also concerned with Father's anger issues, stating that his anger was bad enough that her supervisor had instructed her not to go to Father's residence alone or to conduct meetings in the home. Wood explained that at least another six to nine months would be required to even begin considering if Father was making the changes necessary to be a fit parent. Wood also testified that Father had not completed any court orders, including orders concerning substance abuse, domestic violence, and anger management.

3

Wood testified that C.B. was attached to her placement. In a visitation one week before the termination hearing, C.B. become confused and upset due to having Mother and Father visit.

The district court found by clear and convincing evidence that Mother and Father were unfit to properly care for C.B. and that their conduct or condition was unlikely to change in the foreseeable future. The court noted that Father's substance abuse issues made him unable to properly care for C.B. The court stated that Father angrily left the court during the lunch break and did not return, showing continued anger problems. The court expressed great concern for Father's tendency to get angry, lash out, and physically hurt those close to him.

The district court made the specific legal findings that Father was unfit on two conditions: the use of intoxicating liquors, narcotics, or dangerous drugs of such duration or nature to render him unable to care for C.B. and the lack of effort on his part to adjust his circumstances, conduct, or conditions to meet the needs of C.B. See K.S.A. 2016 Supp. 38-2269(b)(3), (8). The court found there was clear and convincing evidence that Father was unfit now and unlikely to change in the foreseeable future, especially when considering time for a child's perspective. Father's rights were terminated and Father timely appeals.

On appeal Father argues that the district court improperly applied K.S.A. 2016 Supp. 38-2269(b)(8). Father also contends that there was insufficient evidence to find by clear and convincing evidence that he was unfit to properly care for C.B.

*K.S.A. 2016 Supp. 38-2269(b)(8)*

Father argues that if the district court relies on K.S.A. 2016 Supp. 38-2269(b)(8) the "and" of the provision requires the court to also address K.S.A. 2016 Supp. 38-

4

2269(b)(9). Father fails to provide any legal authority to support his claim. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. See *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015). An issue not briefed by the appellant is deemed waived or abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). Therefore we do not need to address Father's argument.

But even if we assume that the issue was properly supported, Father's argument is unpersuasive. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016).

K.S.A. 2016 Supp. 38-2269(b) states:

"(b) In making a determination of unfitness the court shall consider, but is not limited to, the following, if applicable:
(1) Emotional illness, mental illness, mental deficiency or physical disability of the parent, of such duration or nature as to render the parent unable to care for the ongoing physical, mental and emotional needs of the child;
(2) conduct toward a child of a physically, emotionally or sexually cruel or abusive nature;
(3) the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child;
(4) physical, mental or emotional abuse or neglect or sexual abuse of a child;
(5) conviction of a felony and imprisonment;
(6) unexplained injury or death of another child or stepchild of the parent or any child in the care of the parent at the time of injury or death;

(7) failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family;

(8) lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child; and

(9) whether the child has been in extended out of home placement as a result of actions or inactions attributable to the parent and one or more of the factors listed in subsection (c) apply."

In context, it is clear the "and" located at the end of K.S.A. 2016 Supp. 38-2269(b)(8) is there to mark the end of a list of factors the court shall consider. It is not meant to join K.S.A. 2016 Supp. 38-2269(b)(8) and (9). The district court did not err in failing to address K.S.A. 2016 Supp. 38-2269(b)(9).

*Sufficiency of the Evidence*

Father argues there was insufficient evidence for the district court to find, by clear and convincing evidence, that he was unfit by reason of conduct or condition to properly care for C.B. and the conduct or condition was unlikely to change in the foreseeable future.

"When this court reviews a district court's termination of parental rights, we consider whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced that a rational factfinder could have found it highly probable, *i.e.* by clear and convincing evidence, that the parent's rights should be terminated." *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011).

In making this determination, we do not reweigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

When determining whether a person's parental rights should be terminated, the district court must consider the nonexclusive factors set out in K.S.A. 2016 Supp. 38-

6

2269(b). Any one factor may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. Supp. 38-2269(f).

When determining whether a person will remain unfit for the foreseeable future the period of time to be considered must be from the child's perspective, not the parent's. See *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009).

The district court first found that Father was unfit due to his consistent use of methamphetamine. Evidence presented at the hearing indicated that Father was using methamphetamine and drinking alcohol while this case was underway and while Father was on probation. Father would submit UAs late or not at all. In the six months between initiation of CINC proceedings and the termination hearing Father had not completed any court orders concerning his substance abuse. Testimony indicated that at least another six to nine months would be required to even begin considering whether Father was making the changes necessary to be a fit parent.

Viewed in a light most favorable to the State, the court did not err in finding that Father was unfit due to his substance abuse. Further, when viewed through the child's perspective, the court did not err in finding that Father was unlikely to stop using methamphetamine in the foreseeable future. See *In re C.C.*, 29 Kan. App. 2d 950, 954, 34 P.3d 462 (2001) (foreseeable future should be viewed from the child's perspective, not the parents').

The district court found that Father was also unfit because he failed to work on his anger issues and violent tendencies. Father repeatedly threatened and injured Mother, often while C.B. was present. While Father was on probation for domestic battery, and this case was proceeding, he continued to display fits of anger. In a period of time where Father could be expected to be on his best behavior he left court hearings because he felt things were not going his way. Father's behavior was alarming enough that Wood was instructed to not go to his residence alone or to conduct meetings in his home. As with

7

Father's methamphetamine use, at least six to nine months would be necessary to even begin considering whether he was making the necessary changes to become a fit parent.

Viewed in a light most favorable to the State, the district court did not err in finding that Father was unfit due to a lack of effort to change his circumstances, conduct, or condition. When viewed through the lens of "child time" it is clear that Father would remain unfit for the foreseeable future.

Father's final argument is that he was not given enough time or opportunity to show that he could care for C.B. Father alleges he was immediately prohibited from visiting C.B. However, after examining the record this allegation is unfounded. The district court ordered that Father would be allowed to visit C.B. after he provided a clean UA and a hair follicle for testing. Father failed to do so. Further, he did not request visits. Father was provided with time and opportunity to show that he could become a fit parent to C.B., and he failed to do so.

We conclude there was clear and convincing evidence to establish that Father was an unfit parent and that the condition was unlikely to change in the foreseeable future. Accordingly, the district court did not err in terminating Father's parental rights.

Affirmed.