IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,292

EDINA HARSAY,
*Appellant*,

v.

UNIVERSITY OF KANSAS,
*Appellee*.

SYLLABUS BY THE COURT

1.

K.S.A. 60-518 is applicable to save a Kansas Judicial Review Act action challenging a university promotion and tenure denial, if the action is refiled within six months of dismissal for lack of prosecution.

2.

On the record in this case, a university's decision to deny promotion and tenure was supported by evidence "based on a determination of fact, made or implied by the agency" that was "supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole," as required by K.S.A. 2017 Supp. 77-621(c)(7).

Review of the judgment of the Court of Appeals in an unpublished opinion filed July 29, 2016. Appeal from Douglas District Court; ROBERT W. FAIRCHILD, judge. Opinion filed November 21, 2018. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.

*Edina Harsay*, appellant, was on the briefs pro se.

*Sara L. Trower*, associate general counsel and special assistant attorney general, and *Michael C. Leitch*, associate general counsel and special assistant attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

BEIER, J.: After being denied promotion and tenure at the University of Kansas, Edina Harsay brought this action under the Kansas Judicial Review Act. The district judge dismissed the action for lack of prosecution. Harsay then refiled within six months, relying on K.S.A. 60-518, the savings statute, to make her action timely.

A panel of our Court of Appeals reversed the dismissal, ordering remand to the University to begin the promotion and tenure consideration process anew. The University has successfully petitioned for our review of whether K.S.A. 60-518 should have been applied, and, if so, whether the University's decision to deny Harsay promotion and tenure should be upheld because it was supported by substantial evidence.

We hold K.S.A. 60-518 applied to make Harsay's refiled KJRA action timely; but, because the University's decision was supported by substantial evidence under K.S.A. 2017 Supp. 77-621(c)(7), that decision must stand.

## FACTUAL AND PROCEDURAL BACKGROUND

Harsay was hired for a tenure-track position on the faculty of the University in January 2004.

*The University's Promotion and Tenure Process*

The University's multilayered review process for tenure culminates in the granting or the denial of promotion and tenure. Denial leads to termination of employment. Each level of review is independent of the others; no reviewing level is bound by the decision of any other; and each level must base its decision on the applicant's scholarship, teaching, and service to the University.

The process ends with the chancellor's decision. According to the University's rules, the chancellor must consider the entire record before him or her in making the decision. The chancellor's decision is a final agency action under Kansas law.

According to the University, scholarship is an essential aspect of the applicant's record and the tenure review process. Applicants seeking tenure must demonstrate "accomplishment reflecting a sustainable program of scholarly activity," and review of this area must be done "in light of the expectations of the discipline." Scholarship review covers both the quantity and quality of the applicant's work. It also includes evaluation of the work by peers in the applicant's field from outside the University, as well as evaluation of the applicant's reputation in his or her field. An applicant's "teaching (or professional performance), scholarship, and service are characterized as 'excellent,' 'very good,' 'good,' 'marginal,' or 'poor.'" An applicant for tenure must receive at least a rating of "'good'" in all three categories "[a]bsent exceptional circumstances."

*Harsay's Dossier*

Harsay's tenure review began in 2009 in her Department of Molecular Biosciences, to which Harsay submitted a promotion and tenure "dossier." The dossier included information about her pertinent scholarship and grants as well as external reviews from peers in her field.

Harsay reported her scholarship as one published article in a scientific journal in 2007; one paper accepted and being prepared for publication, which was published later in 2009; and one manuscript being considered for acceptance for publication.

As for grants, Harsay reported four grants from the National Institutes of Health (NIH) and one grant from the American Heart Association, totaling slightly more than $600,000. Harsay also included one pending grant from the NIH, one pending grant from the National Science Foundation (NSF), and one pending grant from the Department of Defense, totaling nearly $3.6 million. Harsay included proposals for eight more grants submitted to various organizations but not funded at the time of her application for tenure.

The peers in Harsay's field whose remarks were included in the dossier varied in their opinions regarding her promotion and tenure. Three reviewers recommended Harsay for tenure; three recommended tenure but expressed serious reservations; one refused to endorse her. All reviewers mentioned insufficiency of scholarship. At least one reviewer commented that a low publication rate like Harsay's could make it difficult to maintain funding for her work.

*Department Level*

The review at the department level of the University resulted in a recommendation for Harsay to receive promotion to associate professor and tenure. The vote was 11 to 6.

In its recommendation letter to the College of Liberal Arts and Sciences committee that would conduct the next level of review, the department review committee noted Harsay's relatively low number of published papers and said that "[t]he question of quantity versus quality was also at the center of the department's discussion." A review

4

by the full department noted that the external reviewers "expressed concerns about her level of productivity." But Harsay "had moderate to good success at obtaining extramural support for her research" and had grants pending or received.

The department's recommendation was forwarded to the College Committee on Appointments, Promotions, and Tenure (the College Committee).

*College of Liberal Arts and Sciences Level*

The College Committee initially concluded that Harsay did not qualify for promotion and tenure and notified the chair of Harsay's department, Robert S. Cohen, by letter. The College Committee made "this decision . . . largely based on research productivity." It requested additional information on Harsay's scholarship and research proposals so that it could make a final recommendation to the body responsible for the next level of review, the University Committee on Promotion and Tenure (the University Committee). The College Committee's letter to Cohen stated that Harsay was to be provided a copy of the letter and an opportunity to respond to its preliminary conclusion.

Cohen responded to the College Committee's request for more information. He told the College Committee that since Harsay submitted the dossier she had successfully published another paper (bringing her total to two) and the third paper mentioned in the dossier, i.e., the "submitted manuscript," had been rejected by a publisher. Cohen also informed the College Committee that two of the three grants listed as pending in the dossier had not been funded and that a decision on the third pending grant was expected within a month.

Harsay also responded to the College Committee's preliminary conclusion. In her letter, she explained why she believed she had not been given proper credit for her scholarship, the hardships that may have affected her ability to publish more research

papers, and the impact of her work. Harsay admitted difficulty in obtaining funding, speculating that it was due to receiving less than the proper amount of credit for some of her scholarship.

Victoria Corbin, the College Committee chair, informed Harsay that, after reviewing her record, the committee finally voted to reject the application for promotion and tenure. Although the committee believed that Harsay met the criteria for teaching and service, it "determined that [Harsay's] level of research accomplishment [was] insufficient and did not meet the criteria for promotion to Associate Professor." The College Committee then told Harsay that her information would be forwarded to the University Committee.

A letter from the College Committee to the University Committee, signed by Corbin, said the College Committee's final vote was 7 to 0, with two abstentions. In its evaluation summary, the College Committee rated Harsay's teaching and professional performance as "Very Good"/"Good," her overall service as "Good," and her research and scholarship as "Marginal"/"Poor." The College Committee letter also incorrectly stated that Harsay had received only two grants from the National Institutes of Health and connected Harsay's lack of publications with a lack of funding: "Lacking sufficient, long[-]term extramural funding in molecular biosciences means fewer scholarly publications can be produced[,] which in turn negatively affects the ability of [Harsay] to remain competitive for future funding."

The College's interim dean, Gregory B. Simpson, wrote to the University Committee to state his agreement with the College Committee's decision. According to Simpson, Harsay's lack of scholarly articles and inability to acquire sufficient extramural funding outweighed the potential benefits of granting her tenure. In his letter, Simpson repeated the incorrect statement that Harsay had secured only "two smaller grants" instead of the five that she had reported in the dossier. However, he correctly stated that

Harsay had two articles "while at KU." After noting that all of the external reviewers had commented on Harsay's low research output, Simpson suggested Harsay not be granted tenure "[b]ased on her relatively weak research record at this point in her career."

*University Level*

The University Committee conducted a preliminary vote on Harsay's application and rejected it, pointing to Harsay's lack of "research productivity" as the reason for her application's failure.

Per University rules, the University Committee informed Simpson by letter that it had initially voted to deny Harsay tenure and requested additional information to help it reach a final decision. It asked why the department committee had rated "Professor Harsay's research as very good in light of her low productivity and the evaluation of her external reviewers." It requested "[a]n assessment of the sustainability of Professor Harsay's research program in the absence of external funding." And it sought "[a] report on the status of the NSF application under review." The University Committee letter to Simpson also stated that Harsay should be notified of the committee's initial decision and afforded an opportunity to defend herself.

Cohen supplied information to Simpson in response to the University Committee's request, saying that the NSF grant was still pending but that "the likelihood for funding is probably quite low as most of the awards from this cycle have already been made." He also defended the department's evaluation of Harsay's research productivity and positively commented on her funding sustainability.

Harsay also responded to the University Committee's initial decision. She acknowledged its concern with the "sustainability of [her] research program" and noted

7

the potential impact of her research. She asserted that funding should not be a problem for her but recognized "my funding situation is currently a hardship for my lab."

The same day, Simpson sent Interim Provost Danny J. Anderson materials the College Committee had collected when the University Committee requested more information.

The University Committee ultimately rejected Harsay's application for promotion and tenure on a 9 to 0 vote, with one abstention.

Anderson sent a letter to Harsay, informing her of the University Committee's decision and stating he agreed with it. He also forwarded the recommendation to the chancellor for her final decision. Anderson's letter to Harsay did not explain in detail why he accepted the University Committee's recommendation, but it did state "the [committee] has recommended that you not be awarded tenure or promotion to Associate Professor . . . based upon your record of research productivity."

*Faculty Rights Board Appeal*

Harsay appealed the decisions of the College Committee and the University Committee to the Faculty Rights Board, claiming that her right to academic freedom had been violated.

The board rejected Harsay's claim, saying in a short letter to Harsay, the chancellor, the associate general counsel for the University, the interim provost, and the vice provost that it found no substantive violation of Harsay's rights as a faculty member, as those rights were defined by the University's rules and regulations. The board recommended that Harsay's case be finally decided by the chancellor.

*Chancellor's Decision*

On April 23, 2010, Anderson sent a letter to Harsay to inform her of the chancellor's decision. The letter did not elaborate on rationale, stating simply: "Chancellor [Bernadette] Gray-Little has decided to accept the recommendation of the University Committee on Promotion and Tenure not to award you tenure or promotion to Associate Professor." The letter also stated that, as a result, Harsay's employment by the University would terminate. The letter itself was "intended to serve as a notice of final agency action."

*District Court Action*

Harsay filed a timely petition for judicial review of the University's promotion and tenure decision in the Douglas County District Court. She alleged that the decision was not supported by substantial evidence and was unreasonable, arbitrary, or capricious. See K.S.A. 2017 Supp. 77-621(c)(7), (8) (two of eight grounds for reversal of agency decision under the KJRA).

On June 21, 2012, Harsay's district court action was dismissed for failure to prosecute. Nearly six months later, on December 4, 2012, Harsay refiled the case under the savings statute, K.S.A. 60-518, which provides: "If any action be commenced within due time, and the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff . . . may commence a new action within six (6) months after such failure."

The district court ruled against Harsay on the merits of her challenge to the University's decision, holding that the University's denial of promotion and tenure was supported by substantial evidence and was not unreasonable, arbitrary, or capricious.

*Court of Appeals Decision*

Harsay appealed, and a panel of our Court of Appeals reversed the district court's decision. *Harsay v. University of Kansas,* No. 114,292, 2016 WL 4069604, at *8-9 (Kan. App. 2016) (unpublished opinion).

The panel cited the Administrative Procedure Act, specifically the requirement in K.S.A. 77-526(c) that a final order shall include

"separately stated, findings of fact, conclusions of law and policy reasons for the decision if it is an exercise of the state agency's discretion, for all aspects of the order, including the remedy prescribed and, if applicable, the action taken on a petition for stay of effectiveness. Findings of fact, if set forth in language that is no more than mere repetition or paraphrase of the relevant provision of law, shall be accompanied by a concise and explicit statement of the underlying facts of record to support the findings."

The panel ruled that meaningful appellate review of the University's decision was impossible because its factual findings and legal conclusions in the April 23, 2010, letter were "inadequate to disclose the controlling facts or the basis of the agency's findings." 2016 WL 4069604, at *8.

The panel accurately pointed out that the College Committee had incorrectly reported to the University Committee that Harsay had only "'two small external grants' from the NIH. This report of Dr. Harsay's grant funding was materially in error," because she had been awarded a total of five grants from two sources at the time of her tenure application. 2016 WL 4069604, at *8. The panel noted that the University Committee cited no basis for its recommendation that tenure be denied other than Harsay's "record of research productivity," and the chancellor accepted the University Committee's recommendation. 2016 WL 4069604, at *5.

10

The panel then continued:

> "If the chancellor had before her the correct information on Dr. Harsay's scholarly works and funded research grants over her years at the University, would the chancellor have made the same decision? The chancellor very well may have arrived at the same conclusion that Dr. Harsay should be denied tenure because of an inadequate record of research productivity . . . [b]ut it is not for us to speculate on whether the chancellor's decision would have been different if she had before her a recommendation from the University Committee based on accurate information." 2016 WL 4069604, at *9.

The panel thus reversed the district court judgment and remanded the case to the University to restart Harsay's promotion and tenure review process. 2016 WL 4069604, at *10.

### DISCUSSION

Before reaching the dispositive K.S.A. 60-518 and substantial evidence issues on petition for review, we pause to discuss three preliminary matters briefly.

First, shortly before the docket to which Harsay's case was assigned was set to begin, Harsay moved to "immediately" file a conditional cross-petition for review. Conditional cross-petitions were allowed for the first time when we amended Supreme Court Rule 8.03, effective July 1, 2018. See Supreme Court Rule 8.03(a)(1). Harsay sought to address two issues – the applicability of K.S.A. 60-518 and the appropriate remedy for her tenure denial. Because these two issues have already been exhaustively covered in both parties' voluminous filings, including supplemental briefs to this court, we deny Harsay's motion. This ruling on the merits of the motion eliminates any necessity to address whether the motion was untimely or otherwise procedurally deficient.

11

Second, we agree with the University that the KJRA provides the bulk of the statutory infrastructure supporting an action such as Harsay's, which was filed in the district court to challenge a final agency action with which she disagreed. Indeed, Harsay invoked the KJRA's grounds for reversal in her petition, asserting that the University's tenure decision was not supported by substantial evidence, see K.S.A. 2017 Supp. 77-621(c)(7), and was otherwise unreasonable, arbitrary, or capricious, see K.S.A. 2017 Supp. 77-621(c)(8). The panel's citation and quotation of the Administrative Procedure Act demonstrated no contrary understanding of the governing law in a judicial review action. It merely supported the panel's observations of the bare-bones nature of the University's notice of the decisions made at two levels of Harsay's tenure review. These observations and inaccuracy in the count of Harsay's grants when the College Committee reported its outcome to the University Committee combined to make the panel lose confidence in its ability to perform its mandatory role under the KJRA. See K.S.A. 77-606 (KJRA "exclusive means of judicial review of agency action"). This is not the same thing as disregarding or misunderstanding that role, as the University contends.

Third, we must address preservation of the K.S.A. 60-518 issue. Ordinarily we would not permit a party to raise an issue for the first time in a petition for review. However, an absence of subject matter jurisdiction can be raised at any time—by a party or by the court sua sponte, see *Stechschulte v. Jennings*, 297 Kan. 2, 29, 298 P.3d 1083 (2013) (citing *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, 185, 106 P.3d 483 [2005]); *Ternes v. Galichia*, 297 Kan. 918, 921, 305 P.3d 617 (2013) (citing *Vorhees v. Baltazar*, 283 Kan. 389, 397, 153 P.3d 1227 [2007])—and compliance with any applicable time limit for challenging an agency action is required to endow a reviewing court with subject matter jurisdiction. See, e.g., *Pieren-Abbott v. Kansas Dep't of Revenue*, 279 Kan. 83, 99, 106 P.3d 492 (2005) ("'The rule is well established that the time for taking an administrative appeal, as prescribed by statute, is jurisdictional and delay beyond the statutory time is fatal.'"); *W.S. Dickey Clay Mfg. Co. v. State Corp.*

12

*Comm'n of State*, 241 Kan. 744, 749, 740 P.2d 585 (1987) (time limitation for administrative appeal jurisdictional, failure to appeal within statutory limit fatal); *Lakeview Village, Inc. v. Board of Johnson County Comm'rs*, 232 Kan. 711, Syl. ¶ 5, 659 P.2d 187 (1983) (same); *Vaughn v. Martell*, 226 Kan. 658, 661, 603 P.2d 191 (1979) (same). We thus permit the University to raise and argue its position that K.S.A. 60-518 should have been unavailable to make Harsay's refiled KJRA action timely. We see no unfairness in this approach, as Harsay has had ample opportunity to rebut the University on this point.

*K.S.A. 60-518*

Having disposed of the three preliminary matters, we turn next to the merits of whether K.S.A. 60-518 applied to save Harsay's case and preserve subject matter jurisdiction. Because this issue requires interpretation or construction of K.S.A. 60-518 and the KJRA, we exercise unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015) (statutory interpretation, construction raise questions of law reviewable de novo). And

> "'[t]he fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained. When language is plain and unambiguous, there is no need to resort to statutory construction. An appellate court merely interprets the language as it appears; it is not free to speculate and cannot read into the statute language not readily found there.'" *In re Estate of Strader*, 301 Kan. 50, 55, 339 P.3d 769 (2014).

Under the KJRA, "[a] petition for judicial review of a final order shall be filed within 30 days after service of the order." K.S.A. 2017 Supp. 77-613. The parties do not dispute that Harsay initially complied with this deadline by filing her district court petition for judicial review within 30 days of receiving notice of the chancellor's decision. While the action was pending, the 30-day jurisdictional time limit expired.

Again, nearly two years later, Harsay's action was dismissed for failure to prosecute. Within six months of that dismissal, Harsay refiled her KJRA action, relying on K.S.A. 60-518 to make it timely despite the expiration of the 30 days.

K.S.A. 60-518 is not a part of the KJRA but of the Code of Civil Procedure. The University therefore argues that it cannot apply in this case. But, in *Pieren-Abbott v. Kansas Dept. of Revenue*, we held that provisions of the Code of Civil Procedure can apply to appeals taken under the KJRA "if the provision is a logical necessity that is not addressed within the KJRA." 279 Kan. at 97. In that case, we observed that the procedural rights created by the KJRA are "'in addition to those created and imposed by other statutes.'" 279 Kan. at 96. And we relied upon summons and service of summons provisions in K.S.A. 8-1020(o) and in the Code of Civil Procedure, specifically K.S.A. 2003 Supp. 60-303, to allow review under the KJRA "to come into being." 279 Kan. at 97. The KJRA lacked the provisions borrowed from K.S.A. 8-1020(o) and K.S.A. 2003 Supp. 60-303; importing them qualified as a "logical necessity." 279 Kan. at 97.

Although *Pieren-Abbott* could support application of K.S.A. 60-518 in this case because the KJRA lacks a savings provision, we need not go so far as to say that any savings provision is a "logical necessity" for the KJRA to perform its function. Rather, we can look to the plain language of K.S.A. 60-518 itself, which states unequivocally that it applies to "*any* action" that is commenced within "due time" and that fails "otherwise than upon the merits" when "the time limit for the same shall have expired." (Emphasis added.) This broad language encompasses a suit such as Harsay's, and this straightforward reading of it is "'the best and only safe rule for ascertaining the intention of lawmakers.'" *Neighbor*, 301 Kan. at 919. Thus we hold that K.S.A. 60-518 was correctly employed by the district court to allow Harsay's refiled action to proceed.

14

*Substantial Evidence*

With the subject matter jurisdiction question answered, we turn to the merits of the University's decision:  Was the denial of promotion and tenure to Harsay, as required by K.S.A. 2017 Supp. 77-621(c)(7), "based on a determination of fact, made or implied by the agency" that was "supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole"?

We have frequently defined "substantial competent evidence" as "that which possesses both relevance and substance and which furnishes a substantial basis in fact from which the issues can reasonably be resolved." See, e.g., *State v. Sharp*, 289 Kan. 72, 88, 210 P.3d 590 (2009). "Substantial competent evidence," as that phrase is used in myriad cases, is essentially equivalent to "evidence that is substantial" under K.S.A. 2017 Supp. 77-621(c)(7). See *Atkins v. Webcon*, 308 Kan. 92, 96, 419 P.3d 1 (2018) (equating "substantial competent evidence" to "evidence 'that is substantial'").

In addition, the KJRA elaborates on the phrase, "in light of the record as a whole," in K.S.A. 2017 Supp. 77-621(d):

> "For purposes of this section, 'in light of the record as a whole' means that the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record . . . cited by any party that supports such finding . . . . In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review."

The choices involved in the decision to recommend or deny tenure are inherently subjective, involve a series of discretionary decisions made by various groups of people, and are based in part on the business judgment of the University. See *Romkes v. Univ. of*

15

*Kansas*, 49 Kan. App. 2d 871, 889-91, 317 P.3d 124 (2014) (discussing cases in the context of employment discrimination and tenure). In this case, the Court of Appeals was rightfully concerned with the lack of detail informing Harsay of the chancellor's final call.

But we do not agree with the panel's assertion that meaningful judicial review was precluded. While the notice of the chancellor's decision was short on details, it did say that the chancellor was accepting the recommendation of the University Committee. And the University Committee stated it initially rejected Harsay's application because it was concerned with her research productivity. This concern was reiterated when it had taken its final vote. Furthermore, Harsay explicitly recognized herself that her research record was somewhat thin—a primary concern for the University. The bottom line is that the existence of this concern and the reasons for it are supported at multiple points in the record of the multilayered tenure review process, including in the expressed misgivings of outside peer reviewers.

Harsay is correct when she states that the number of her funded grants was misstated in the College Committee letter signed by Corbin and in the letter from Simpson, and both misstatements are parts of the KJRA "record as a whole." But there is ample other material in the record correctly stating the number of grants, and the University's rules provide clearly that each level of tenure review makes its own evaluation separately from each other level. Harsay directs our attention to no evidence, substantial or otherwise, that demonstrates that the University Committee or the chancellor deviated from their responsibilities to review *all* materials and arrive at *independent* conclusions.

In sum, "in light of the record as a whole," we see plenty of "evidence that is substantial" under K.S.A. 2017 Supp. 77-621(c)(7) to support the University's decision to deny Harsay promotion and tenure. The single inaccuracy twice mentioned on a subject

16

that was but one feature of one criterion in the three-criterion evaluation process did not fatally pollute that process or necessarily detract from or destroy the many accurate elements the decision makers had before them. Harsay's identification of that inaccuracy is not enough to meet her burden to show a lack of the required evidence under K.S.A. 2017 Supp. 77-621(c)(7). Indeed, if we treated this identification otherwise, we would be derelict in our duty to consider the case "in light of the record as a whole."

Finally, we note that Harsay also attempted in the district court and before the Court of Appeals to challenge the University's decision as "otherwise unreasonable, arbitrary or capricious" under K.S.A. 2017 Supp. 77-621(c)(8). She also added an argument before the Court of Appeals that the University incorrectly applied the law under K.S.A. 2017 Supp. 77-621(c)(4), because it relied on finances as well as her scholarship, teaching, and service in denying her promotion and tenure.

As with the question of whether the record as a whole contained substantial evidence to support the University's decision, the Court of Appeals did not reach the merits of these two distinct challenges by Harsay. Nor did it address any potential preservation problem with the K.S.A. 2017 Supp. 77-621(c)(4) argument advanced for the first time on appeal.

We do not reach the merits of these challenges today because we consider them abandoned. Harsay opposed granting the University's petition for review, did not file a cross-petition for review, and did not attempt to raise either of these two challenges through her eventual motion to file a conditional cross-petition for review. See *State v. Funk*, 301 Kan. 925, 932-33, 349 P.3d 1230 (2015) (issues not fairly included in petition or adequately briefed deemed abandoned). The only petition for review this court granted was filed by the University, and its merits arguments focused only on K.S.A. 2017 Supp. 77-621(c)(7). That issue has been addressed and resolved in the University's favor.

17

CONCLUSION

For the reasons set forth above, the Court of Appeals decision is reversed and the judgment of the district court is affirmed.


STEGALL, J., not participating.
JEFFREY E. GOERING, District Judge, assigned.[1]


* * *


GOERING, J., concurring:  I agree with the majority that there is substantial evidence in the administrative record as a whole to support the University's decision to deny Edina Harsay promotion and tenure. I write separately because I respectfully disagree with the majority that K.S.A. 60-518 can be applied to actions arising under the Kansas Judicial Review Act (KJRA).


"In construing statutes and determining legislative intent, several provisions of an act, *in pari materia*, must be construed together with a view of reconciling and bringing them into workable harmony if possible. [Citation omitted.]" *State v. Brown*, 272 Kan. 843, 847, 35 P.3d 910 (2001). Accordingly, while the language of K.S.A. 60-518 is broad, that language cannot be considered in a vacuum. K.S.A. 60-518 must be construed with the rest of Article 5 in order to determine the scope of its application. K.S.A. 60-501 plainly limits the application of K.S.A. 60-518 to civil actions:  "The provisions of this article govern the limitation of time for commencing *civil actions*, except where a different limitation is specifically provided by statute." (Emphasis added.)

---

[1]**REPORTER'S NOTE:**  District Judge Goering was appointed to hear case No. 114,292 vice Justice Stegall under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.

18

It is well established that administrative appeals to the district court are not "civil actions." *In re Gantz*, 10 Kan. App. 2d 299, 302, 698 P.2d 385 (1985); see also *Kansas Turnpike Authority v. Jones*, 7 Kan. App. 2d 599, Syl. ¶ 1, 645 P.2d 377 (1982) (an appeal to the district court from an administrative decision is not the commencement of a civil action). Rather, administrative appeals are "in the nature of 'judicial review'" of agency decisions. *Flanigan v. City of Leavenworth*, 232 Kan. 522, 528, 657 P.2d 555 (1983); see also *Nurge v. University of Kansas Med. Center*, 234 Kan. 309, 316, 674 P.2d 459 (1983) (the district court in an administrative appeal is a court of error and review). As such, the Legislature never intended K.S.A. 60-518 to be applied to administrative appeals taken under the KJRA.

In *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 106 P.3d 492 (2005), this court held that provisions of the Code of Civil Procedure can be applied to appeals taken under the KJRA "if the provision is a logical necessity that is not addressed under the KJRA." 279 Kan. at 97. In *Pierren-Abbott*, this court addressed the service of a summons necessary to initiate judicial review of an administrative decision suspending driving privileges. This court held that because the service of a summons was required to effectuate judicial review, but the method of serving process was not mentioned in the KJRA, the use of the Code of Civil Procedure became a "logical necessity." 297 Kan. at 97.

The KJRA does not have a savings statute. Nevertheless, the savings statute in K.S.A. 60-518 is not necessary to carry out the functions of the KJRA. Thus, the application of K.S.A. 60-518 to the KJRA is not a "logical necessity" in order for judicial review of an agency action to take place. To the contrary, as the facts of this case demonstrate, the application of the savings statute to administrative appeals defeats the purpose of K.S.A. 77-613(d) which ensures the timely commencement of judicial review of an agency's final order by requiring that a petition for judicial review be filed within 30 days after the agency action.

For the foregoing reasons I would find that Harsay's appeal to the district court was not initiated within the time prescribed by K.S.A. 77-613(d) and would dismiss the appeal on that basis.