NOT DESIGNATED FOR PUBLICATION

No. 118,867

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
JODY BUCHANAN,
*Appellee*,

and

DUSTIN DALE BUCHANAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; PAUL J. HICKMAN, judge. Opinion filed March 1, 2019. Affirmed.

*James D. Sweet*, of James D. Sweet Law Office, of Salina, for appellant.

*Steven K. Blackwell*, of Blackwell & Struble, LLC, of Salina, for appellee.

Before BRUNS, P.J., SCHROEDER and GARDNER, JJ.

PER CURIAM:  Dustin Dale Buchanan entered into a mediated property settlement agreement. Buchanan now appeals the district court's determination that the parties' property settlement agreement is valid, just, and equitable. He claims the district court erred in approving their mediated property settlement agreement because Jody Buchanan, his wife, selected the mediator who was her past real estate client. Dustin also claims the district court erred in finding he was sufficiently aware of his assets and liabilities at the time he entered into the mediated property settlement agreement. Based on our review of the record, we find no error and affirm.

1

Jody and Dustin married in Las Vegas, Nevada, on March 23, 2013. They lived together in Saline County where Dustin owned and managed a farm and a trucking business and Jody worked at Coldwell Banker. Jody filed for divorce in Dickinson County, Kansas. She included a marital settlement agreement she and Dustin signed during their mediation four days earlier. Dustin moved to change venue to Saline County and the district court approved. The Saline County District Court granted the parties a divorce then bifurcated the division of property for a separate evidentiary hearing.

Before the hearing, Dustin asked the district court to take judicial notice of Kansas Supreme Court rules relating to mediation, alleging the marital settlement agreement was invalid. Dustin claimed the mediator violated Supreme Court Rules 901 to 904 (2019 Kan. S. Ct. R. 555-65) because he was Jody's client and he did not disclose this fact before Dustin signed the agreement.

At the evidentiary hearing, both Jody and Dustin testified. According to Jody, four days before she filed for divorce she told Dustin they could not repair their relationship and suggested they try to mediate a settlement agreement on their property. Jody told Dustin she had contacted a mediator and the mediation was set up at her office. The parties then drove separately to her office to participate in the mediation process.

Prior to the meeting, Jody prepared a handwritten list estimating the value of the parties' real property, personal property, and all debts known to her. She did not know about several debts, including Dustin's farming and trucking businesses because Dustin kept that information private. Jody also prepared a typewritten property settlement agreement, but the agreement did not include all the business and farm debts.

Jody testified the mediator and his wife were past clients. The record is unclear about the extent of Jody's relationship with the mediator and his wife. Jody was unsure about the mediator's last name. As part of her work at Coldwell Banker, Jody "moved them into a house." When the mediator and his wife asked about Jody's family she "broke down," admitted her relationship with Dustin was not working, and the mediator offered his services when she was ready.

At the mediation conference, the mediator put Jody and Dustin into two separate rooms, gave Jody's documents to Dustin, and helped the two parties negotiate until they agreed. Their mediation lasted two to three hours, but Jody did not tell Dustin the mediator was a previous client.

Dustin testified he returned home the evening of August 25, 2016, and Jody told him they could not continue their relationship. According to Dustin, Jody explained she had arranged a meeting at her office with a mediator, so she and Dustin drove separately to her office. Once there, the mediator separated Dustin and Jody; he then gave Dustin the documents Jody prepared. The mediator reviewed the proposed agreement with him and told him the handwritten list was what Jody wanted if the two could not agree and had to proceed in court. The mediator advised Dustin he could walk out of mediation, but if he did and it went to court, he might have to pay more money.

According to Dustin, Jody's proposed agreement gave him the assets and debts for his businesses but required him to pay $297,000 to Jody for spousal maintenance. Dustin viewed the proposal as unworkable because "the whole farm is upside down." The mediator asked Dustin for a counterproposal, Dustin provided one, and the mediator exchanged proposals between Dustin and Jody over the next two or three hours.

3

Dustin also testified the mediator never disclosed he was Jody's past client. Dustin felt pressured because he knew Jody would ask for more money if they went to court. When asked whether the mediator was biased, Dustin testified:

"A. I don't really know about a bias, I mean he was friendly enough, but I mean, I don't I guess I don't. . .

"Q. You believe it was fair, wasn't that correct? You didn't believe that that agreement or that the mediator was biased, isn't that correct?

"A. I didn't know that.

"Q. His actions didn't indicate that he was biased isn't that correct?

"A. I mean he didn't really seem like he was doing anything bad as far as, I mean, it wasn't like he was trying to—I don't I know what he was telling her. I mean, he was trying to sway me to do something for her but I don't know if he was being, I mean, I don't know, we weren't in the same room when we were talking about this stuff to really judge whether he was biased towards me or not. He was trying to get me to come up with a dollar figure."

Eventually they reached a mediated agreement and Dustin signed the agreement. He quickly regretted doing so and spoke with his lawyer the next morning. Dustin testified the final agreement was incomplete because it did not include all the bank accounts known to him—specifically debts to his businesses. He also testified he knew what he owed and what liabilities existed on his trucking business and farm when he met with the mediator.

The parties' agreement gives Jody certain household goods, a vehicle, one bank account, and $35,150 as a one-time spousal support payment from Dustin. The agreement also makes Jody responsible for her personal debt. The agreement gives Dustin the household goods not given to Jody, the marital residence, the land, farm equipment, a truck, several vehicles related to his trucking businesses, and several bank accounts with large negative amounts. It also makes Dustin responsible for his personal debts and all debts or loans to three banks, including any agricultural loans and corporation loans.

4

The district court approved the agreed-upon property settlement agreement as valid, just, and equitable. The district court also found there was no undue influence by either party in reaching the agreement and it was based on full disclosure because Dustin knew of all the marital assets, debts, and expenses at the time the agreement was reached.

ANALYSIS

Dustin claims the district court abused its discretion by finding the separation agreement was valid, just, and equitable because of the mediator's alleged bias, but he cites no pertinent authority. He discusses the responsibility of a mediator and the Supreme Court Rules addressing mediation, but he fails to recognize the mediator was chosen by the parties, not the court. See Supreme Court Rule 902 (2019 Kan. S. Ct. R. 556). Supreme Court Rules 901 to 904 do not apply to the mediator chosen by the parties. Dustin has failed to brief the issue of why the agreement was not valid, just, and equitable based on the conduct of the mediator. An issue not briefed is deemed abandoned. See *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015). With this finding, we decline to address the merits of Dustin's argument to set aside the mediated agreement because the mediator failed to comply with Supreme Court Rules 901 to 904.

*The agreement was valid, just, and equitable.*

The district court found there was full disclosure because Dustin testified he knew the nature of all the parties' marital assets, debts, and expenses. Dustin alleges the district court erred in its conclusion because "the parties failed to accurately consider all of the assets and liabilities." Appellate review of this claim is subject to the abuse of discretion standard. *In re Marriage of Traster*, 301 Kan. 88, 109, 339 P.3d 778 (2014); see K.S.A. 2018 Supp. 23-2712. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) it is based on an

error of law; or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

At best, Dustin argues an error of fact or that no reasonable person would take the view adopted by the district court. Yet the record supports the district court. Jody prepared a handwritten list estimating the value of the real property, personal property, and debts known to her. She did not know about several debts for Dustin's farming and trucking businesses because he kept that information private. Jody prepared a typewritten property settlement agreement and her proposal lacked some of the farm and trucking business debts. Even so, Dustin testified the mediator gave him Jody's documents. He also testified he knew the value of his property and debts at the time of the mediation. During the mediation, Dustin balked at Jody's first spousal maintenance request of $297,000 because "the whole farm is upside down." According to Dustin, the mediator "was trying to get me to come up with a dollar figure" to respond to Jody. The mediator exchanged counterproposals between Dustin and Jody for two or three hours.

Dustin bargained for the final agreement and by the end of the mediation he and Jody agreed to reduce spousal maintenance to a one-time payment of $35,150, far less than the original proposal. They also agreed Jody would take some household goods, her vehicle, and her bank account, while Dustin would take the remaining household goods, the marital residence, the land, his personal vehicle, several farm vehicles, all farm-related debt, and all the assets and debts of his trucking businesses. A reasonable person could conclude, as the district court did, the parties were aware of their assets and liabilities when they negotiated their agreement. The district court did not err in finding the mediated agreement was a valid, just, and equitable division of the assets of this marriage.

Affirmed.

6