No. 122,556

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CORTNEY AST and JESSICA HOAG,
*Appellants*,

v.

MYLEENA A. MESKER,
*Appellee*.

SYLLABUS BY THE COURT

1.

A statute of limitations extinguishes the right to prosecute a cause of action after a specified period of time and it cuts off the remedy. Consequently, if an action is filed after the applicable statute of limitations has run and this affirmative defense is asserted, dismissal is appropriate.

2.

K.S.A. 58a-604(a) sets forth the statute of limitations for actions contesting the validity of a trust that was revocable at the time of the settlor's death. The statute requires that any legal proceeding contesting the validity of such a trust must be filed within one year after the settlor dies.

Appeal from Sedgwick District Court; DEBORAH HERNANDEZ MITCHELL, judge. Opinion filed December 23, 2020. Affirmed.

*Paul D. Snyder* and *Karen E. Snyder*, of Snyder Law Firm LLC, Overland Park, for appellants.

*Coy Martin*, of Coy Martin Law, LC, of Wichita, for appellee.

1

Before HILL, P.J., BRUNS and SCHROEDER, JJ.

BRUNS, J.:  Cortney Ast and her sister, Jessica Hoag, appeal from the district court's dismissal of this action arising out of the amendment of a revocable living trust. Ast and Hoag—who are two of the grandchildren of the late Bill Edwin Mesker—sued Myleena A. Mesker for undue influence. At the time of his death, Bill had been married to Myleena for more than 20 years. In their petition, Ast and Hoag alleged that Myleena exerted undue influence on Bill when he amended his revocable living trust in 2016. The district court dismissed this action on the ground that the undue influence claim asserted by Ast and Hoag is barred by the statute of limitations set forth in K.S.A. 58a-604(a). We agree that the undue influence claim is barred by the statute of limitations. Thus, we affirm the district court's dismissal of this action.

## FACTS

Unfortunately, this is not the first time that this family has been before our court. Previously, Ast and Hoag—together with their father—sued their elderly grandfather, Bill Mesker, over his management of his late wife's living trust. In that case, the district court held a bench trial in which it ultimately found that Bill had not breached his duty of loyalty under K.S.A. 58a-802. On appeal, we affirmed the district court's decision regarding the breach of the duty of loyalty claim as well as its ruling on the issue of attorney fees. *Mesker v. Mesker*, No. 114,995, 2017 WL 543544 (Kan. App. 2017) (unpublished opinion).

As set forth in our previous opinion, Bill served in the United States Navy during World War II. In 1943, he married Ginger Mesker and they were blessed with three children. Two of the children are still living and one is deceased. Over the years, Bill and Ginger invested in numerous businesses and real estate ventures. As a result, the couple were able to accumulate significant assets.

2

After their children were adults, the couple became interested in the possibility of creating revocable living trusts to protect their assets. In October 1992, the Bill Mesker Living Trust—which is the subject of this appeal—and the Ginger Mesker Living Trust—which was the subject of the previous appeal—were created. At the time, Bill was 71 years old and Ginger was 68 years old.

On November 2, 1995, Ginger passed away. About a year after her death, Bill married Myleena, who had been employed by the Meskers since 1987. Also following Ginger's death, Bill made a number of gifts to his children and grandchildren—including Ast and Hoag. As the district court found in the previous lawsuit, Bill provided substantial financial support to members of his family over the years.

Between 1992 and 2016, Bill amended his revocable living trust on at least five occasions. In doing so, he added Myleena as a beneficiary and made several adjustments regarding residuary distributions. For instance, on January 28, 2013, Bill amended his living trust to grant 20% of the residuary to Myleena, 20% of the residuary to each of the three trusts established for his children, 15% of the residuary to be divided among his five grandchildren, and the remaining 5% to be distributed in accordance with a schedule set out in the trust agreement.

On May 25, 2016, while the previous appeal was pending before this court, Bill amended his revocable living trust for the final time. In doing so, Bill increased Myleena's residuary share to 50%. At the same time, he removed Ast and Hoag as beneficiaries and limited the amount their father would receive from the trust upon Bill's death to $500 a month up to a total of $12,000. The 2016 amendment also provided for a residuary distribution of 35% to a trust established on behalf of Bill's daughter, and 15% to a trust established for his deceased son's widow.

On October 30, 2017, more than a year after his revocable living trust was amended for the last time, Bill died at his home. Two days later, Ast and Hoag received a copy of the coroner's report which revealed that Bill suffered from Alzheimer's, dementia, anxiety, and depression at the time of his death. As a result, Ast and Hoag began questioning whether Bill had the mental capacity to amend the living trust in May 2016.

Nearly two years later, on September 25, 2019, Ast and Hoag filed this action alleging that Myleena—who is 73 years old—asserted undue influence over her husband at the time he executed the final amendment of his revocable living trust. Neither the trustee nor the trust beneficiaries were named as parties. In their petition, Ast and Hoag identified their claim as being for "common law undue influence."

Specifically, Ast and Hoag asserted that Myleena's "influence was so potent as to destroy [her husband's] free agency" at the time he amended his revocable living trust for the last time. In their prayer for relief, Ast and Hoag asked the district court to invalidate the 2016 amendment to the trust agreement. In the alternative, they sought to recover monetary damages from Myleena.

A few weeks later, Myleena filed a motion to dismiss for failure to state a claim upon which relief can be granted. Specifically, she asked the district court to find that the undue influence claim asserted by Ast and Hoag is barred by the statute of limitations as set out in K.S.A. 58a-604(a). In addition, she asserted that Ast and Hoag could not recover monetary damages as a matter of law. Finally, Myleena asserted that Ast and Hoag had failed to join necessary parties. On November 19, 2019, the district court heard oral arguments. At the conclusion of the hearing, the district court took the motion to dismiss under advisement.

4

On November 27, 2019, the district court issued a written decision dismissing the lawsuit. In doing so, the district court found that the one-year statute of limitations set out in K.S.A. 58a-604(a) is applicable to an undue influence claim contesting the validity of a living trust that was revocable at the time of the settlor's death. Because Bill died on October 30, 2017, the district court determined that the last day for Ast and Hoag to file their petition would have been on October 31, 2018. Consequently, the district court concluded that "[t]his action was filed well after this date [and] as such the statute has run and dismissal is appropriate."

ANALYSIS

On appeal, Ast and Hoag argue that the district court erred in applying the statute of limitations set forth in K.S.A. 58a-604(a) because "the one-year statute of limitations is only applicable where the sole relief sought is the modification of a trust and [they] sought alternative relief that had nothing to do with trust modification." In addition, Ast and Hoag argue that "even if [they] had limited their relief to modification of the trust . . . the specific factual circumstances alleged by [them] called for the application of the two-year statute of limitations under K.S.A. 60-513(a)(4) and the discovery rule under K.S.A. 60-513(b)." In response, Myleena argues that the district court did not err because the plain language of K.S.A. 58a-604(a) required dismissal of this undue influence action.

As the parties recognize, the "'interpretation and application of a statute of limitations is a question of law over which an appellate court exercises unlimited review.'" *Garcia v. Ball*, 303 Kan. 560, 571, 363 P.3d 399 (2015). As the Kansas Supreme Court has held, "[a] statute of limitations extinguishes the right to prosecute an accrued cause of action after a period of time. It cuts off the remedy. It is remedial and procedural." *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 668, 831 P.2d 958 (1992). Consequently, if an action is filed after the applicable statute of limitations has run and this affirmative defense is raised, dismissal is appropriate.

5

The most fundamental rule of statutory construction is that the intent of the Kansas Legislature controls. *Harsay v. University of Kansas*, 308 Kan. 1371, 1381, 430 P.3d 30 (2018). To determine legislative intent, we must first look to the statutory language enacted and give common words their ordinary meanings. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). Where a statute is plain and unambiguous, we are not to read something into the statute that is not readily found in its words. *Harsay*, 308 Kan. at 1381. Where there is no ambiguity, we need not resort to statutory construction. *Nauheim*, 309 Kan. at 409.

The statute of limitations applied by the district court—K.S.A. 58a-604(a)—is part of the Kansas Uniform Trust Code (KUTC), K.S.A. 58a-101 et seq. As our Supreme Court has found, the KUTC "is a substantial adoption of the Uniform Trust Code (UTC)." *In re Harris Testamentary Trust*, 275 Kan. 946, 950, 69 P.3d 1109 (2003). The primary intent of both the KUTC and the UTC "is to carry out the settlor's intent." *Godley v. Valley View State Bank*, 277 Kan. 736, 741, 89 P.3d 595 (2004) (citing English, *The Kansas Uniform Trust Code*, 51 U. Kan. L. Rev. 311, 328 [2003]).

K.S.A. 58a-604(a) sets forth the statute of limitations for actions contesting the validity of a trust that was revocable at the time of the settlor's death. Specifically, the statute states:

> "A person may commence a judicial proceeding to contest the validity of a trust that was revocable at the settlor's death within the earlier of:
>
> (1) *One year after the settlor's death*; or
>
> (2) four months after the trustee sent the person a copy of the trust instrument and a notice informing the person of the trust's existence, of the trustee's name and address, and of the time allowed for commencing a proceeding." (Emphasis added.)

6

We find the language used by the Kansas Legislature in K.S.A. 58a-604(a) to be plain and unambiguous. In particular, we find that the statute expressly requires that any legal proceeding contesting the validity of a trust revocable at the time of the settlor's death must be filed within one year after the settlor dies. We also note that this interpretation is consistent with the official comment to the UTC found in the Editors' Note to K.S.A. 58a-604. As the comment explains, "[a] trust can be contested on a variety of grounds" including—but not limited to—"lack of capacity" or "undue influence" in creation of the trust.

In their petition, Ast and Hoag expressly sought an order "invalidating the May 25, 2016 Trust agreement" on the ground of common law undue influence. See *Cresto v. Cresto*, 302 Kan. 820, 831-32, 358 P.3d 831 (2015) (discussing common law undue influence). It is undisputed that the trust Ast and Hoag seek to invalidate was revocable at the time of their grandfather's death. Likewise, it is undisputed that Ast and Hoag did not file their petition contesting the validity of the trust until nearly two years after Bill had passed away. Accordingly, this action was filed well after the statute of limitations set forth in K.S.A. 58a-604(a) had expired.

Nevertheless, Ast and Hoag argue that the one-year statute of limitations under K.S.A. 58a-604(a) should not apply because the petition also sought—in the alternative—an award of monetary damages. They argue—without any citation to legal authority—that K.S.A. 58a-604 does not apply to "mixed/alternative" prayers for relief. They further argue that we should apply the two-year statute of limitations set forth in K.S.A. 60-513(a)(4) in this case.

As our Supreme Court has explained, a point raised incidentally in an appellate brief is deemed abandoned. *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017). Similarly, failure to support an argument with pertinent legal authority or show why it is sound despite a lack of supporting authority is analogous to failing to brief the issue.

7

*University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015). Consequently, we find that Ast and Hoag have abandoned this argument.

Even if Ast and Hoag had not abandoned this issue, we note that this court has previously held that "[l]ack of capacity and undue influence are equitable rather than legal claims in that they effectively void or rescind a contract rather than yield money damages for breach." *Moore v. Moore*, 56 Kan. App. 2d 301, Syl. ¶ 9, 324, 429 P.3d 607 (2018). In addition, as the parties recognize in their briefs, there is no legal authority in Kansas that contradicts this conclusion.

Although dicta in *Maxwell v. Southwest Nat. Bank, Wichita, Kan*., 593 F. Supp. 250, 252-53 (D. Kan. 1984), can be read to suggest that there might be circumstances under which an award of damages would be appropriate, the opinion does not identify these hypothetical circumstances. Further, in *Maxwell*, the federal district court was not addressing a claim of undue influence. It did, however, conclude—citing *Axe v. Wilson*, 150 Kan. 794, 96 P.2d 880 (1939)—that Kansas does not recognize the tort of interference with an inheritance. Of course, no claim for tortious interference with inheritance has been asserted in this case.

We also find, contrary to the assertions of Ast and Hoag, that K.S.A. 60-513(a)(4) is not applicable to a claim arising out of the creation or amendment of a revocable living trust. On its face, K.S.A. 60-513(a)(4) establishes a two-year statute of limitations for "[a]n action for injury to the rights of another, *not arising on contract*, and not herein enumerated." (Emphasis added.) A trust agreement is—by definition—a contract. See Langbein, *The Contractarian Basis of the Law of Trusts*, 105 Yale L.J. 625, 627 (1995). As such, because this action arises out of a revocable trust agreement or contract, K.S.A. 60-513(a)(4) does not apply. Further, we find that K.S.A. 58a-604 is a specific statute of limitations dealing with undue influence challenges to revocable trusts and controls over

the general statute of limitations found in K.S.A. 60-513(a)(4). See *Harding*, 250 Kan. at 661 ("It is a well-settled rule of law that 'statutes complete in themselves, relating to a specific thing, take precedence over general statutes.'") (quoting *Szoboszlay v. Glessner*, 233 Kan. 475, 479, 664 P.2d 1327 ([1983]).

Ast and Hoag also argue that the "discovery rule" found in K.S.A. 60-513(b) is applicable to this case. We again note that Ast and Hoag do not present any legal authority to support their argument that K.S.A. 60-513(b) is applicable to their undue influence claim. As such, this argument has also been abandoned. See *University of Kan. Hosp. Auth.*, 301 Kan. at 1001. Moreover, even if this argument had been properly briefed, it is not the role of courts to add to the statutory language adopted by the Kansas Legislature. See *Harsay*, 308 Kan. at 1381. Instead, questions regarding the wisdom or fairness of a statute are for the Legislature to determine. See *Jarvis v. Kansas Department of Revenue*, 312 Kan. 156, 170, 473 P.3d 869 (2020).

Consequently, we conclude that Ast and Hoag's undue influence claim arising out of the final amendment that their grandfather made to his revocable living trust is barred by the one-year statute of limitations in K.S.A. 58a-604 and we affirm the district court's dismissal of this case.

Affirmed.

9